LAND, Justice.
 

 This is a suit for an injunction to prevent the sale via exeeutiva of lot 7, block 26, of j the West Shreveport subdivision in the city' of Shreveport, with buildings and improvements thereon, belonging to M. S. and Lulu Davis, plaintiffs, and on which a special mortgage was stipulated in favor of the Abraham Lincoln Home Founding Company, Inc., the other plaintiff in the ease.
 

 The cases of Rufus Atkins et al. v. F. E. Lacaze, and F. E. Lacaze v. Rufus Atkins et al., on the docket of the First district court, and involving a similar state of facts, were consolidated with the instant case for purpose of trial only.
 

 The evidence shows that Clem V. Ratcliff of Shreveport had pledged with F. E. Laeaze, defendant, also of that city, certain mortgage
 
 *78
 
 notes of M. S. and Lulu Davis, Rufus Atkins, Mrs. May Woods, and Julia Woods, to secure Ms two promissory notes in the sum of $1,-500 each. On or about April 6, 1031, several years later, Ratcliff called on Lacaze at his office and substituted for the collateral notes pledged to him a mortgage note of the Dairy Fertilizer Company, Inc., of which Ratcliff was president, in the sum of $3,000,- secured by a special mortgage on block C of the Belle Meade subdivision in Caddo parish.
 

 Block C of the Belle Meade subdivision is south of the prominent Broadmoor subdivision in Shreveport and contains about ten one-half acre lots.
 

 At the time the mortgage note of the Dairy 'Fertilizer Company was substituted for the collateral notes, Ratcliff represented to Lacaze that block O of the Belle Meade subdivision was good and valuable property.
 

 On the other hand, Mr. J. S. Walker, an expert witness for defendant, who examined the property prior to the trial, placed a small valuation on same.
 

 Judgment was rendered in favor of plaintiffs, granting the injunction prayed for, and defendant has appealed.
 

 There cannot be any question that there was an agreement between Ratcliff and Lacaze, the defendant, for the substitution of the $3,000 special mortgage note of the Dairy Fertilizer Company for the old collateral notes of the plaintiffs herein. Ratcliff swears positively that such an agreement was entered into. Lacaze, the defendant, frankly stated with reference to his conference at Ms office with Ratcliff as to the substitution of securities:
 

 “I told him yes,
 
 with the mental reservation,
 
 although I didn’t bring it to him, that I was going to look into the value of the property
 
 at the time I told, him I would accept it.”
 
 Tr., p. 92. (Italics ours.)
 

 A binding contract had been effected. One cqnnot make a contract and, at the same time, impose upon it the condition of an uncommunicated “mental reservation.” C. C. art. 1803.
 

 The only question presented, therefore, is whether or not Ratcliff’s idea of the value of the property, securing the special mortgage note of the Dairy Fertilizer Company, amounted to such misrepresentation as would avoid and nullify the contract deliberately entered into between the parties.
 

 In Black on Rescission of Contracts and Cancellation of Written Instruments, vol. 1, § 79, the general rule is correctly stated as follows:
 

 “Statements in regard to the value of that which constitutes the subject of a sale or other contract are not regarded in law as representations of fact such as to justify rescission or relief in equity, if false, but merely as expressions of opinion, which do not bind the party making them and on which the other party has no right to rely.”
 

 Paragraph 3 of article 1847 of the Civil Code also provides that:
 

 “3. A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected
 
 *80
 
 the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.”
 

 Defendant could have easily inspected the lots in block O of the Belle Meade subdivision and ascertained that they were of small value, but did not do so, before accepting the $3,000 special mortgage of the Dairy Fertilizer Company on these lots.
 

 The uniform jurisprudence of this court is that error as to the value of land, which is the object of the contract, is not error of fact, but error of judgment, for which the law furnishes no relief, since the value of the land could have been verified by inspection. Davitt v. Long-Bell Farm Land Corporation et al., 162 La. 59, 110 So. 88; Citizens’ Bank of Louisiana v. James, 26 La. Ann. 264; Kirkland v. Edenborn, 140 La. 669, 73 So. 719.
 

 Judgment affirmed.