If I understand correctly the conclusions reached in the majority opinion, the result is to reverse the trial judge on both his finding of facts and his interpretation of the law. While the trial judge made a clear finding of fact that there was no evidence of collusion by Griffing with either Roumain or Collins to purchase this ring from Sims for much less than its value, it seems from reading the majority opinion that it is based on a finding of fact, or at least a strong suspicion, that there was a kind of concerted scheme among Griffing, Roumain, Collins, and even the negro porter Jackson, to toll Sims into this jewelry store in order to get this diamond ring for a price far below its real value. I am not only unable to find anything in the record to justify a reversal of the finding of the trial judge on this point, but I cannot find sufficient evidence to even create a strong suspicion that there was any collusion between these parties for this purpose.
The trial judge found that Griffing never made any statement to Sims to mislead or deceive him as to the value of the ring, and I do not find that the majority opinion disagrees with this finding. However, much stress is laid on the fact that Griffing heard the conversation between Sims and Roumain as to the proposition of Roumain to buy or that of Sims to sell the ring for $130 and what was said about the value of the ring by Roumain and what was said by Collins about bubbles in the ring. From the conclusion that Griffing heard the conversation and from the fact that he knew that the ring was worth at least $500, it is concluded that he had no right to purchase this ring from Sims without advising him of the fact that it was worth more than he was offering to sell it for, or more than Roumain had offered to give for it; that Griffing sustained the same fiduciary or confidential relation toward Sims as the owner of the store or his co-employee, Collins, sustained toward Sims who had come into the store to get expert advice as to the value of his ring.
It is an undisputed fact that Sims never asked Griffing for an opinion as to the value of the ring. Moreover, Sims did not expect Griffing to tell him the value of the ring. He was not relying on Griffing to tell him how much he should ask for the ring. In fact, so far as the record shows, Sims did not come into this store to sell the ring; he came there to have it tested. He was free to sell it or keep it and let his wife continue to wear it. As far as the record shows, he was just as anxious and willing to sell the ring as Griffing was to buy it.
Such being the case, the relation of these two parties must be considered from the standpoint of Sims as the seller and Griffing as the purchaser of an article which the former was willing to sell and the latter was willing to purchase for the price of $130. And, as the trial judge states, the sole question is whether or not the purchase of the ring for this amount by Griffing when he knew that it was worth at least $500 was, under the circumstances, such fraud or concealment on the part of Griffing as to justify Sims in having the sale rescinded. As mere inadequacy of price in the sale of moveable property is not sufficient to rescind the sale, it follows that Sims carries the burden of proving that Griffing perpetrated such a fraud on him as to create an error sufficient to annul the agreement.
We must look at the parties in the relation in which they stood to each other. Griffing knew that the ring was worth more than four times the price he gave for it; Sims knew that he had a diamond ring, but he did not know what it was worth nor how much bubbles would affect its value. While it has been shown that this ring is actually worth $1,200 or more, for the purpose of determining the duty of Griffing towards Sims, we must consider what Griffing thought at the time that the ring was worth. In other words, Griffing knowing that the ring was worth at least $500, was the suppression of this knowledge on his part such a fraud as to justify a recission of the sale?
The only part of the Civil Code that seems to be applicable directly to the case *Page 452 
is Article 1847 which treats of the nullity of agreements on account of fraud. Paragraphs 3 and 4 seem to bear on the question. These two paragraphs of this article state a principle of law that seems to be generally understood and followed in most all commercial transactions, both in our state and in the common law states. That is, the false assertion of the value of an article is not such fraud as will invalidate the agreement, provided both parties have an equal opportunity to judge the value, that is to say where the party who is induced to contract by reason of the false assertion might with ordinary attention and diligence have detected the falsehood. Davis et al. v. Lacaze, 181 La. 75, 158 So. 626.
I do not think Sims can rescind this sale under paragraphs 3 and 4 of the above articles for two reasons: First, because there was no false assertion on the part of Griffing as to the value of the ring; that is, he did not tell Sims that the ring was not worth more than $130; and second, there was no duty on the part of Griffing to inform Sims that the ring was worth more than $130. There was nothing to prevent Sims from finding out from other experts the value of his ring or own property before offering it for sale. He had no right to expect Griffing with whom he was negotiating for the sale of the ring to tell him of any intrinsic value that it might have, as Griffing was not being consulted for his expert advice or in a professional or fiduciary capacity.
Pothier, the great exponent of the Civil Law, in De Vente, Articles 294-298 (see note in Laidlaw et al. v. Organ, 2 Wheat. 178, 4 L.Ed. p. 215), has well stated the duty of the vendee. In discussing the situation where the vendee conceals from the vendor the knowledge which he may have touching the thing sold, and which knowledge the vendor may not possess, Pothier deems it only an obligation in conscientiae on the part of the vendee to apprise the vendor of this superior knowledge and not such an obligation as will avoid the contract if the vendee conceals this knowledge from his vendor, both because it would unduly restrict trade and the freedom of commerce, and because the vendor ought to know best the qualities of the articles he sells, and if he does not, it is his own fault. See Annotations in 56 A.L.R. p. 429.
Paragraph 4 of Article 1847 of the Civil Code does prohibit a false assertion regarding the value or quality of an article where it requires skill or expert knowledge to determine the falsity of the assertion, or where the person to whom the false assertion is made does not have the opportunity of ascertaining its falsity by the reasonable use of available means. Assuming that this covers the suppression of a fact as well as the assertion of a falsehood, I can hardly see, as already stated, where there was a legal duty on the part of Griffing to speak, although there was probably a moral or ethical duty on his part to inform this negro something of the value of a diamond of this kind. In treating of the duty of one who has superior knowledge to speak, the qualification of the rule is stated in 23 Am.Jur., Fraud and Deceit, Section 78, p. 854, as follows: "In the application of the rule concerning the duty to speak, however, it must be pointed out that while one cannot properly withhold the truth from those who have reason to expect information from him, those who do not look to him for information and expect no disclosure from him cannot properly complain of his silence or successfully contend that he has suppressed the truth. In order that suppression of the truth may constitute fraud, there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other and which the other party is entitled to have communicated to him. In other words, the facts concealed must be such as, in fair dealing, the one party has a right to expect to be disclosed, and such as the other party is bound to disclose."
Not only was there no relationship between Griffing and Sims requiring the former to disclose to the latter his superior knowledge of the value of the ring, but, as already stated, Sims did not expect Griffing to do so. Sims at no time relied on Griffing to tell him the value of the ring.
If I could find from the record that there was a concerted scheme among Roumain, Collins, Griffing and the negro porter to beat Sims out of this ring, or get it from him for a song, I would have no hesitancy in agreeing to a rescission of the sale. But I think the question presents only one of law to the effect that a purchaser who has superior knowledge of the value of an article is not legally required to inform the vendor of his knowledge of such value, unless there is a fiduciary or confidential relationship between the parties. As Pothier so well says, there is an obligation *Page 453 
of the conscience on the part of such purchaser to tell his vendor that he is parting with an article for much less than its real value, but, unfortunately, our law has not yet developed to the point where ethical and moral standards can be enforced in commercial transactions among men unless some legal principle is also involved.
I can think of no happier state of society than that in which men become so governed by the principles of the Golden Rule that a man would not buy an oil well, a piece of antique furniture, a block of stocks and bonds, or a gold mine, without first imparting to his prospective vendor the superior knowledge which he may have concerning the present or future value of the thing which he offers to buy in order that his vendor may know just what value he is about to surrender. But as one of the principal incentives of trade is the expectation of the purchaser to get something which he can sell for more than it cost him and net him a profit, it is hardly practicable to enforce a rule of law that would largely deprive him of that hope and expectation and thus, as Pothier says, seriously restrict trade and commerce.
For these reasons, I find myself unable to agree with the conclusions reached by my associates, and therefore respectfully dissent.