O’NIELL, Chief Justice.
 

 The plaintiff is appealing from a judgment dismissing her suit on an exception of no cause of action. She is suing, primarily, to enforce what she calls an implied resolutory condition in a sale which she made to the Union Homestead Association, of her shares of stock in the association, on July 26, 1935. The Union Homestead Association was the predecessor of the defendant, Union Savings & Homestead Association. In the alternative, the plaintiff is suing the Union Savings & Homestead Association for damages.
 

 She avers that her shares of stock in the Union Homestead Association were worth $9,750 when she sold them to the association, and that she was induced to sell them for half their value, or $4,875,
 
 *224
 
 by being deceived as to the value of the stock, by a circular letter signed by the president and secretary of the Union Homestead Association on July 25, 1935, and sent out by them to the shareholders of the association, as follows:
 

 “To our Members:
 

 “We regret to advise you that our application for the United States Government insurance of shares will not be approved because of the amount of real estate acquired under defaulted mortgages. This item of frozen assets is considered too large a proportion of our total resources.
 

 “Following an interview with the officials of the Federal Home Loan Bank and the State Banking Department, it has been determined to reduce our stock listing to thirty-eight dollars ($38) per share, effective August 13, 1935. ■ Prior to that date we will pay fifty dollars ($50) per share, through the New Orleans Homestead Association.
 

 “This notification is given to afford you an opportunity to dispose of your stock at the present price of fifty dollars ($50) per share if you are inclined to do so.”
 

 The plaintiff avers that the only purpose which the president and secretary of the association had in sending out this circular letter was to induce her and other shareholders to sell their shares at a loss, so that the association and the remaining shareholders might be enriched at the expense of the shareholders who would be induced by the circular letter to sell their stock for half of its value. She avers that the association and its officers knew or should have known that the stock had a greater value than that which they represented in the circular letter, and that by means of this letter the president and secretary of the association conspired to conceal and did conceal the true value of the shares of stock, and thereby took an unfair advantage of their fiduciary relation and of the trust and confidence which the plaintiff and other shareholders had and were entitled to have in the officers and directors of the association. She avers that she was induced by the circular letter to believe that her stock was not worth more than $50 per share, and to believe that if she did not surrender it at that price on or before August 13, 1935, she would suffer a further loss of $12 per share by having to part with the stock for $38 per share. She avers that her stock was worth considerably more than $50 per share, “according to listed quotations appearing in the Times-Picayune or the New Orleans Item, between the dates of July 25, 1935, and January 10, 1936.” She avers that it was because of her relying upon the representations made in this circular letter that she sold her shares of stock to the association for half their value. She avers that she is informed and believes that the listing of the stock was never reduced to $38 per share and that the officers of the association had no intention of reducing the listing of the stock. She avers that at the time when the circular letter was written and sent out by the president and secretary of the association the sound value of the capital stock was between $90 and $100 per share, “based upon the statements furnished the State Banking Department,
 
 *226
 
 as shown by the books of said association”; and that she is informed and believes that the value of the stock was $100 per share soon after she was induced to part with her shares.
 

 Plaintiff avers that, as a result of her surrendering her shares of stock at a sacrifice, the Union Homestead Association and the shareholders who retained their shares were benefited and enriched, by the sacrifice which she was induced to make, by the circular letter sent to her by the president and secretary of the association on July 25, 1935.
 

 The plaintiff avers that, if the court cannot restore to her the shares of stock which she had in the Union Homestead Association, she is entitled to damages for having been induced by the misrepresentations and threats and warnings in the circular letter to surrender her shares of stock for half their value.
 

 This suit is not brought against the Union Homestead Association, or its officers, but only against the Union Savings & Loan Association, alleged to be the successor in business of the Union Homestead Association. In that connection the plaintiff avers that the Union Homestead Association was chartered on June 10, 1886; that its charter was amended on November 10, 1938; that by the amendment the name of the association was changed to Union Savings & Loan Association; and that by an act of merger, of that date, all of the assets of the Union Homestead Association, as well as those of the Suburban Homestead Association, were transferred to the Union Savings & Loan Association, who assumed all of the obligations of the two forrner associations.
 

 The prayer of the plaintiff’s petition is: “that the Union-Savings & Loan Association be duly cited,” et cetera, “and that the sale of petitioner’s shares made on July 26, 1935, to the Union Homestead Association (now the Union Savings & Loan Association) be resolved and decreed null and void and of no effect, and that said sale be further resolved between your petitioner and the defendant [Union Savings & Homestead Association], and that she be decreed entitled to the ownership of shares in said Union Savings & Loan Association to the extent of $9,750, subject to payment made to her of $4,875 in cash, which she is now ready, able and willing to return to the defendant without delay, in .order that her investment may remain as it was prior to her receiving said notice from said defendant, or, in the alternative, that plaintiff do have and recover judgment against said defendant for Four Thousand Eight Hundred -and Seventy-five ($4,875) Dollars, together with the dividends that have been declared since the date on which she was induced to part with her shares upon the misrepresentations of the defendant.”
 

 The plaintiff does not point out in her petition what was the implied resolutory condition in the offer which was made to the stockholders of the Union Homestead Association, in the circular letter dated July 25, 1935, which offer she accepted on July 26, 1935. Her attorney argues in his brief that there was an implied stipulation, or resolutory condition, in the circu
 
 *228
 
 lar letter, that, if the Union Homestead Association should succeed thereafter in obtaining insurance from the Federal agency, the contract of sale would be dissolved and the shares of stock would be returned to the plaintiff upon her returning to the association the price which she received. The plaintiff cites and relies upon articles 2021 and 2026 of the Civil Code. In article 2021 it is declared:
 

 “Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation take effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition.”
 

 The plaintiff concedes that the sale of her stock to the Union Homestead Association took effect immediately, but she contends that it was subject to the resolutory condition that it would be annulled if the association should obtain insurance from the Federal agency. And she argues that this implied condition resulted “from the presumed intent of the parties”, as provided in article 2026 of the Civil Code, thus:
 

 “Conditions [in contracts] are either express or implied. They are express, when they appear in the contract; they are implied, whenever they result from the operation of law, from the nature of the contract, or' from the presumed intent of the parties.”
 

 It is conceded, of course, by counsel for the plaintiff, that there did not appear in the contract of sale of her stock any express condition, such as she is trying to enforce in. this case. It is conceded also that no such condition resulted from the operation of law, or from the nature of the contract. And the circular letter which formed the basis of the contract, and which forms, a part of the plaintiff’s petition in this suit, shows that “the presumed intent of the parties” was that the sale of the plaintiff’s stock to the Union Homestead Association was to be an unconditional sale, not dependent upon a resolutory condition.
 

 In fact it is not alleged in the plaintiff’s petition that the Union Homestead Association obtained Federal insurance after the association bought the plaintiff’s shares of stock. The omission of that allegation is not important now, however, because it is admitted in the brief for the defendant that the association did 'obtain the insurance about the end of the year 1935 or in the beginning of the year 1936. It is sufficient to say, in response to the plaintiff’s suit to enforce an alleged resolutory condition, that her petition discloses that the sale of her shares of stock to the Union Homestead Association was not made on any such condition, either express or implied. It is not necessary, therefore, to consider the question whether, if the contract of sale had been made subject to a resolutory condition, the plaintiff could enforce the condition at this late date against the successor in business of the Union Homestead Association. The suit was filed on December 26, 1939; that is, exactly four years and five months after the plaintiff sold her shares of stock, approximately four years after the Unión Homestead Association obtained Federal
 
 *230
 
 insurance, and a year and more than a month and a half after the business and affairs of the Union Homestead Association were taken over by the Union Savings & Loan Association, defendant in this suit.
 

 What we have said about the staleness of the plaintiff’s demand to rescind the sale of her stock is applicable also to her alternative demand for damages. It must be presumed, in fact it seems quite certain, that the shareholders in the Union Savings &■ Loan Association are not all the same individuals who remained as shareholders in the Union Homestead Association when the plaintiff sold her stock, and who are alleged to have been benefited by the plaintiff’s sale of her stock. As a general rule, in Louisiana, the only staleness that can defeat a lawsuit is that which lasts long enough for the suit to be barred by a statute of limitation or prescription. But exceptions to the rule are found in cases where it is obvious that the tardiness of the plaintiff in bringing his or her suit is apt to cause injustice, particularly to parties who have had nothing to do with the alleged cause of action.
 

 Aside from the fact that the plaintiff is not suing the corporation whose officers are alleged to have imposed upon her, or suing the officers themselves, our opinion is that the plaintiff’s petition , does not disclose a cause of action, either to annul the sale of her shares of stock or to collect damages. Obviously, the sending of the circular letter to the shareholders of the association was done in pursuance of the provisions of Act No. 5 of the Legislature of 1934. The statute was enacted to relieve the stagnation with which the business of the homestead associations generally was afflicted, because of their having such an excess of frozen assets, in the form of past-due mortgage notes and repossessed property for which there was no demand. The statute authorized, for a limited period, all homestead associations to acquire bonds of the Home Owners’ Loan Corporation, in exchange for mortgage notes or repossessed property, and to use the proceeds of the bonds to buy and cancel enough of the homestead association’s stock “to avert a loss in that particular account on its books”. It was stipulated in the statute that, in purchasing its shares of stock, the homestead association should deal directly with the owners thereof, of record on its books as of date January 15, 1934, or with the heirs, legatees, executors or administrators of such, owners, “and without the intervention of any broker, intermediary or third person”. And it was provided in the 3rd section of the statute that the homestead associations doing business in a city having a population exceeding 150,000 (meaning in the city of New Orleans) should not pay a price .for their stock exceeding the price posted by the association for one week on the bulletin board of the Homestead Clearing House in that city.
 

 The only representations that the plaintiff avers were misrepresentations, in the circular letter which was sent out to the shareholders of the Union Homestead Association, v were, first, the representation that the stock was worth only $50 per share, and, second, the representation that the
 
 *232
 
 association would reduce the listing of its stock to $38 per share on the bulletin board of the New .Orleans Homestead Clearing House, effective on August 13, 1935. In that connection the plaintiff avers that the listing of the stock was never reduced to $38, and that the officers of the .association “had no real intention to so reduce the price thereof.” That allegation comes nearer to stating a cause of action than any other allegation in the plaintiff’s petition. But the allegation must be taken in connection with the declaration made in the circular letter and not denied in the plaintiff’s petition that the determination of the officers of the homestead association to reduce the listing of the stock to $38 per share was the result of an interview with the officials of the Federal Home Loan Bank and of the State Banking Department, which exercises supervision over all homestead associations in this state. The allegation that the listing of the stock was not reduced to $38, therefore, means merely that, in response to the circular letter, a sufficient number of shareholders accepted the offer of $50 per share for their stock to avert the necessity of reducing the listing of the stock, or perhaps to avert a liquidation of the affairs of the association by the State Banking Department. The circular letter was merely a proposition to every holder of shares of stock in the association, either to accept in cash half of the par value of his or her shares of stock with the disadvantage that there might be enough acceptances of that price by other shareholders to increase the value of the remaining stock, or to reject the offer and thus incur the risk of there being not enough acceptances to avert the necessity for reducing the listing of the stock to $38 per share, or the necessity perhaps for a liquidation of the affairs of the association. If the plaintiff in this case had been the only shareholder to accept $50 per share for her stock before August 13, 1935, or if only a few others also had accepted that price for-their shares of stock, the plaintiff would have been better off for having accepted the offer of $50 per share than the shareholders would have been who refused the offer of $50 per share for their stock.
 

 The circular letter on which the plaintiff bases her suit did not represent the stock of the association as being worth only $50 per share. On the contrary, anyone reading the letter, and knowing of the provisions of Act No-. 5 of 1934, should have understood that if the Union Homestead Association should succeed in buying and retiring a sufficient number of shares of stock at $50 per share the effect would be to increase the value of the remaining shares above $50 per share. Otherwise it would not have served the purpose of the act of 1934 for the officers of the association to offer $50 per share for its stock.
 

 The plaintiff does not claim that she was denied an opportunity to ascertain the value of her shares of stock at the time when she received the circular letter offering her $50 per share for the stock. On the contrary, she avers that the stock was listed in the stock quotations appearing in the daily papers in New Orleans between the date of the circular letter and the 10th of Jan
 
 *234
 
 uary, 1936; and she does not even allege that the publishing of the quotations did not commence before the date of the circular letter. She avers also that the value of her shares of stock at the time when she received the circular letter was “based upon the statements furnished the State Banking Department, as shown by the books of said association”. All of which means that if the plaintiff was not well informed of the value of her shares of stock at the time when she sold them it was because she neglected to read the quotations appearing in the daily newspapers, and neglected to refer to the financial statements which were furnished the State Banking Department by the Union Homestead Association.
 

 It is declared in the third paragraph of article 1847 of the Civil Code that a false statement made by a party to a contract of sale, as to the value of the object of the sale, is not such a fraud, “such an artifice”, as will give to the other party the right to annul the sale, if the object was of such a nature and in such a situation that he who was induced by the false statement to enter into the contract “might with ordinary attention have detected the ' falsehood”. Therefore, if the statement in the circular letter which induced the plaintiff to sell her shares of stock for $50 per share, that the listing of the stock wopld be reduced to $38 on the nineteenth day after the date of the circular letter, should be regarded as a false statement, it was not a false statement of which the plaintiff may complain, because “with ordinary attention” she could have learned all that any one else could know about the value of her shares of stock. On account of the fiduciary relation of the officers and directors to the stockholders of a corporation, the third paragraph of article 1847 of the Civil Code might not be deemed applicable to this case if the president and secretary of the Union Homestead Association had withheld from the plaintiff any information concerning the value of her shares; but that is not the case.
 

 The attorney for the appellant cites the case of Markey v. Hibernia Homestead Association, decided by the Court of Appeal for the Parish of Orleans, and reported in 186 So. 757. That case was decided upon allegations which were made in the plaintiff’s petition and were supported by a number of letters which passed between the plaintiff and the homestead association, which allegations were very different from the allegations made in the petition in this case.
 

 The defendant pleaded in the civil district court that the plaintiff’s alternative demand for damages was barred by the prescription of one year. The judge of the civil district court, having concluded that the plaintiff had no cause of action, found it unnecessary to consider the plea of prescription. Both parties • have argued the question of prescription, on the assumption that, notwithstanding the issue was not decided in the civil district court, it is an issue which this court may decide, because a plea of prescription is one which may be filed in an appellate court. Our conclusion that the plaintiff has not a cause of action makes it unnecessary to consider the plea of prescription.
 

 The judgment is affirmed. .
 

 
 *236
 
 McCALEB, J., concurs with written reasons.