338 So.2d 303 (1976)
Donald J. ZADECK et al., Plaintiffs-Appellants,
v.
ARKANSAS LOUISIANA GAS COMPANY, Defendant-Appellee.
No. 12877.
Court of Appeal of Louisiana, Second Circuit.
April 19, 1976.
On Rehearing September 27, 1976.
Greene, Ayres & Mayo, by Robert K. Mayo, Shreveport, for plaintiffs-appellants Donald J. Zadeck, DeSoto Gas Producing Co., Inc., Louis Egan and Belle Bower Production Co., Inc.
Blanchard, Walker, O'Quin & Roberts, by Robert Roberts, III, Shreveport, for defendant-appellee.
Before BOLIN, MARVIN and SMITH, JJ.
SMITH, Judge.
Plaintiffs seek cancellation of a gas purchase agreement entered into in 1957 by A. R. Cassard, plaintiffs' ancestor in title, and Arkansas Louisiana Gas Company (hereafter, "Arkla") calling for the sale of the gas produced from two wells located in the Stonewall Field in DeSoto Parish. In 1972 the purchase agreement was amended in several respects, including an increase in the amount paid for the gas and an extension of its term.
Plaintiffs' grounds for cancellation include:
1) late payment for gas purchased;
2) insufficient consideration and/or lesion; and
3) Arkla's failure to disclose material facts about the gas market to plaintiffs.
Plaintiffs seek damages for failure to cancel the agreement and reserve the right to sue for future damages.
*304 Defendant answered admitting the late payment but claiming that it was justifiable and reasonable because a notice of tax levy by the United States Internal Revenue Service was served upon them which possibly affected the interests of one of the sellers and, thereby, Arkla's payment for gas purchased. Arkla alleged that natural gas reduced to possession is a movable and that lesion beyond moiety does not apply. Defendants further contend that the agreement was reached after arms length bargaining, plaintiffs being experienced oil and gas operators and the price being comparable to gas prices of other contracts entered into about the same time.
Arkla then filed a motion for summary judgment. In support of that motion, two affidavits were filed. One affidavit, by the senior landman in charge of the Division Order Section of Arkla, explained the suspension of payment as a result of the tax levy. The other affidavit, by the manager of the gas supply department, described the events surrounding the negotiation and execution of the 1972 amendment to the gas purchase contract.
Plaintiffs filed one couner-affidavit in opposition to defendant's motion for summary judgment. That affidavit, by Donald Zadeck, a plaintiff and the mortgagee of the leasehold interest and the production attributable thereto, did not dispute the sworn statements presented by plaintiff, but simply stated that those statements do not bear out arms length negotiations for the 1972 amendment.
The trial court granted summary judgment rejecting the demands of plaintiffs. Plaintiffs perfected this appeal.
A motion for summary judgment can only be sustained where "the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966.
The summary judgment remedy is not a substitute for a trial and may not be resorted to when there is a genuine issue of material fact which must be resolved. Wiltz v. Dixie Auto Sales, Inc., 315 So.2d 811 (La.App.3d Cir. 1975). In considering a motion for summary judgment, the court is not to determine the merits of any factual issues raised, it is to determine only whether there is a genuine issue of material fact. Wiltz, supra; Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963). The mover bears the burden of convincingly showing the absence of a genuine issue of material fact, the burden being such that all reasonable doubt must be resolved in favor of trial on the merits. Wiltz, supra.
The gas purchase agreement provided "payments shall be made not later than the 20th day of each calendar month for production delivered during the preceding month. . . ." It is undisputed that on October 16, 1973, Zadeck and Arkla were served with notice of a tax levy by the United States Internal Revenue Service, informing them of claims possibly affecting Zadeck's mortgagor's interest in the payments for the gas. Between October 16 and October 29, Zadeck spoke several times with Arkla's senior landman, who stated each time that Arkla's attorneys had not made a final determination on the effect on the production payments of the government action.
On November 1, 1973, Zadeck's attorney notified Arkla that the contract had been breached and demanded rescission. About November 6, 1973, Arkla mailed payment to Zadeck. Zadeck contends that this payment was not timely since previous payments had been mailed between the 26th and 29th of the month and were generally received around the 30th of the month. There is no dispute as to these facts.
Some delays in payment were expressly authorized according to the terms of the *305 gas purchase contract itself. That contract provided:
"(K) Warranty. . . . Seller further warrants that all such production is delivered free and clear of all liens, encumbrances and adverse claims, including liens to secure payment of taxes.. . . In the event any adverse claim is asserted, Buyer may retain without interest, as security for the performance of Seller's obligations hereunder with respect to such claim, any amount of monies then or thereafter payable to Seller.. . ."
Under these circumstances, the trial court was correct in concluding from the undisputed facts that there was no delay in payment of the production price sufficient to justify rescission of the contract and in rendering summary judgment in favor of defendant on that ground. The short delay caused by the filing of the tax levy was reasonable and justifiable under the circumstances.
The trial court was also correct in concluding that plaintiffs could not rescind the gas purchase contract on the grounds of lesion beyond moiety. That action is available only to the seller of an immovable estate. See LSA-C.C. arts. 1861, 1862, 2589, 2594. Plaintiffs contend that LSA-R.S. 9:1105, which was in force at the time this contract was consummated, classified this contract as an immovable. We do not agree.
That statute provided as follows:
"Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property."
The contract between plaintiffs and Arkla is not a mineral lease. While the contract does affect Arkla's right to take possession of gas from one already in possession, we hold that it does not affect the right to reduce gas to possession within the meaning of R.S. 9:1105. That statutes applies to capturing minerals which are in natural reservoirs and not to transfers of possession of minerals already "reduced to possession."
Gas which has been reduced to possession certainly falls within the ambit of LSA-C.C. art. 473, which provides:
"Art. 473. Things movable by their nature are such as may be carried from one place to another, whether they move by themselves, as cattle, or can not be removed without an extraneous power, as inanimate things."
We conclude that gas that has been reduced to possession is a movable and, therefore, lesion beyond moiety is not available to a possessor-vendor, such as the plaintiffs. The trial court was correct in rejecting plaintiffs' demands with respect to this issue.
We disagree, however, with the trial court's conclusion that there was no issue of material fact with respect to plaintiffs' third allegation. Plaintiffs contend that Arkla withheld information about market conditions which would have corrected plaintiffs' misconception of their position.
That is, in effect, pleading that the contract is invalid for want of plaintiffs' consent. Article 1819 of the Louisiana Civil Code provides:
"Art. 1819. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the *306 preceding paragraph, but also where it has been produced by
Error;
Fraud;
Violence;
Threats."
There can be no doubt that the principal cause for plaintiffs' entering the gas purchase agreement was the promise of fair market value for that gas. Plaintiffs contend that he was in error as to market conditions and that Arkla improperly withheld information relating to those conditions.
Article 1832 of the La.Civil Code provides:
"Art. 1832. In all cases, however, when the information, which would have destroyed the error, has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract."
As noted above, the court must consider "the pleadings, depositions, and admissions on file, together with the affidavits, if any. . ." to determine whether there is a "genuine issue as to material fact." LSA-C.C.P. art. 966.
In examining the interrogatories, we note that Zadeck, in answer to a question propounded by Arkla concerning the withholding of information, stated that he was told by an official of Arkla that the company "would not pay more than 20¢ for gas, yet at the same time, or approximately the same time (February 17, 1972) Arkla entered into a contract with Pennzoil for the intrastate sale of gas in a North Louisiana Field for the price of 26¢ per MCF." This statement indicates that a question of fact exists as to what Zadeck was told by Arkla to induce the sale of the gas. There is also a question of Zadeck's knowledge of market conditions existing at the time of the sale.
In light of the strong policy in favor of trial on the merits, we conclude there exists sufficient issue of material fact to remand this case for trial with respect to this issue.
For the foregoing reasons, the judgment of the lower court is reversed and the case is remanded for further proceedings in accordance with law and the views expressed herein. Appellee is to bear costs of this appeal. Assessment of other costs is to await final determination of these proceedings.
REVERSED AND REMANDED.
Before BOLIN, PRICE, HALL, MARVIN and JONES, JJ.

On Rehearing
BOLIN, Judge.
Plaintiffs sued Arkansas Louisiana Gas Company (Arkla) to cancel a gas purchasing contract in which plaintiffs agreed to sell gas to defendant. Plaintiffs alleged several grounds for canceling the contract, one of which was that Arkla had failed to disclose material facts about the gas market to plaintiffs at the time the contract was negotiated. After answering, defendant filed a motion for summary judgment to which was attached supporting affidavits. Plaintiffs filed a counter-affidavit by Donald Zadeck. The lower court sustained the motion for summary judgment and dismissed plaintiffs' suit. Plaintiffs appealed and we reversed and remanded the case for trial upon a finding that there was a material dispute as to whether or not Arkla had withheld special knowledge of the gas market condition from plaintiffs at the time of the negotiation and execution of the gas purchasing agreement. Upon application of Arkla a rehearing was granted. We now affirm the judgment of the trial court.
There is one question on rehearing: Is the determination of whether or not Arkla withheld information about the value of gas a genuine issue of Material fact?
Plaintiff-Zadeck stated in answers to interrogatories that he was told by an official of Arkla the company "did not pay more than twenty cents for gas, yet at the same time, or approximately the same time, (February 17, 1972) Arkla entered into a *307 contract with Pennzoil for the intrastate sale of gas in a north Louisiana field for the price of twenty-six cents per MCF." In our original opinion we held this statement by Zadeck indicated that a question of fact existed as to what Zadeck was told by Arkla to induce the sale of the gas. We further found that the principal cause for plaintiffs entering the gas purchase agreement was the promise of fair market value for that gas. Under these circumstances we found a genuine dispute as to whether the contract could be set aside under Louisiana Civil Code Article 1832 which provides:
In all cases, however, when the information, which would have destroyed the error, has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract.
We now conclude our original opinion was erroneous. Louisiana Code of Civil Procedure Article 966 provides that a summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine factual dispute. To deny a summary judgment there must be a genuine issue of fact and this issue must be material to a proper decision of the case.
Civil Code Article 1847(3) provides:
A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.
A number of Louisiana cases have decided that misrepresentations as to value do not constitute fraud sufficient to set aside a contract. In Wessel v. Union Savings & Loan Ass'n, 198 La. 219, 3 So.2d 594 (1941) it was alleged that plaintiff was induced to sell shares of stock in a savings and loan association by representations in a letter from the association to its stockholders. The letter stated the association had decided to reduce the book value of its stock to $38 per share effective as of a certain date but that prior to that date it would pay $50 per share to any shareholder who desired to sell. Plaintiff alleged she was deceived as to the value of the stock; that she relied on the representations in the letter and as a result thereof she sold her shares to the association for $50 per share whereas in fact the stock had an actual value of between $90 and $100 per share. The court held plaintiff had not stated a cause of action; that any false statement about the value of the stock could have been determined by "ordinary attention" as provided in C.C. Article 1847. Similar results were reached in the following cases: Succession of Grivaud, 192 La. 181, 187 So. 284 (1939); Davis v. Lacaze, 181 La. 75, 158 So. 626 (1935).
Where the means of ascertaining the value of property are equally available to both parties, a sale may not be set aside because information relating to its value was withheld by either party. Forsman v. Mace, 111 La. 28, 35 So. 372 (1903); La Croix v. Recknagel, 230 La. 842, 89 So.2d 363 (1956); White v. Lamar Realty, Inc., 303 So.2d 598 (La.App.2d Cir., 1974).
Generally, the reported cases dealing with alleged fraud in contracts of sale are suits brought by purchasers rather than by sellers and the courts tend to impute to the seller a greater knowledge concerning the object of the sale. In this case the Sellers of gas produced by them are attempting to set aside a sale of this gas on the ground that the buyer had greater knowledge of its value than the seller.
Plaintiffs were no strangers to the oil and gas business. Zadeck stated he had *308 been engaged in the business for "more than 10 years but less than 20." The 1972 amendment to the gas purchasing contract which is the subject of this suit was initiated by Zadeck and it substantially increased the price received by Zadeck for his gas. With Zadeck's background and experience he must be expected to know the value of the gas he was selling. In light of the relative equality of the bargaining position of the parties to the contract, we find no duty on the part of Arkla to reveal market information to the plaintiffs.
In extreme cases in which there existed great disparity of the bargaining position of the parties, our courts have set aside sales. In Griffing v. Atkins, 1 So.2d 445 (La.App.1st Cir., 1941), an ignorant finder of a ring took it to a jeweler to have it examined. Because of fraud and misrepresentations made by the jeweler, the owner sold the ring to an employee of the jewelry store for approximately one-tenth of its value. The sale was set aside because of fraud. There are no extreme circumstances in this case.
We conclude that: the determination of whether or not Arkla withheld information about the value of natural gas is not material to the decision of this case. The motion for summary judgment was properly sustained by the lower court.
The judgment is affirmed at appellant's cost.