391 So.2d 582 (1980)
Glen J. STIPELCOVICH
v.
MIKE PERSIA CHEVROLET CO., INC., Chevrolet Motor Division, General Motors Corporation, Robert Campbell and Joseph Salvatore.
No. 11235.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1980.
*583 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Stewart E. Niles, Jr., New Orleans, for plaintiff-appellee.
Baldwin & Haspel, Michael F. Little and William E. Wright, Jr., New Orleans, for defendants-appellants.
Before CHEHARDY, BARRY and SARTAIN, JJ.
SARTAIN, Judge.
This is a suit for damages suffered by Glen J. Stipelcovich for breach of contract by Mike Persia Chevrolet Company, Inc., Joseph Salvatore and Robert Campbell for the purchase of a limited edition Indy Pacer Corvette automobile. When the automobile arrived defendants refused to deliver the car to plaintiff and this litigation followed.
*584 After trial on the merits judgment was rendered in favor of plaintiff and against defendant Mike Persia Chevrolet Company, Inc. for $20,945.14. The claims against Joseph Salvatore and Robert Campbell were dismissed. From that judgment defendant, Mike Persia Chevrolet Company, Inc., has appealed.

VALID CONTRACT
Defendant avers there was not a valid contract to sell because a written order form had not been signed by plaintiff. Further, defendant contends the trial judge erred in refusing to allow testimony concerning authorizing sales of vehicles.
A contract to sell movables need not be written.[1] In the early part of January, 1978 the parties agreed on the thing, the price and terms. From that moment there existed a valid contract to sell. To prevail defendants would have to prove that a further written agreement was contemplated by the parties to make the oral agreement binding.
Testimony of Robert Campbell revealed that plaintiff had purchased several Corvette automobiles previously. Many of these were for resale through plaintiff's used car business, some were for his Corvette collection. Mr. Campbell generally made agreements to purchase by telephone without signing an order form until delivery of the vehicle. The testimony indicates that a written agreement was not contemplated by the parties until the actual delivery of the automobile. Therefore, a valid oral agreement to sell the Indy Pacer Corvette was reached by the parties.
Evidence concerning sales to other customers or testimony concerning the policy of defendant with regard to written order forms was irrelevant and correctly refused by the trial judge.
Further evidence of the existence of a valid oral contract is the special order form to Chevrolet Motor Division showing the customer as Glen Stipelcovich. According to Robert Campbell the deal was considered settled when the special order form was completed and signed by defendant's sales manager.
Secondly, defendant contends there was not a valid contract because of an error of fact at the inception of the contract. That error, according to defendant, was in setting the price of the automobile. While the car was in production reports of a rise in value of the Indy Pacer Corvette appeared in the newspaper and trade journals, causing defendant's management to realize that the car could have been sold for a substantially higher price.
Error cannot have the effect of voiding a contract otherwise complete as to intent and purpose. Ardoin v. Central Louisiana Electric Company, Inc., 318 So.2d 5 (La.1975). Failure of one of the parties to anticipate the value of the property will not render void a complete contract.
Defendant argues that when one of the parties is unaware or misinformed there exists an error of fact vitiating consent. When that error involves the value of some object and the means of ascertaining that value is equally available to all parties, the sale will not be declared invalid. Zadeck v. Arkansas Louisiana Gas Company, 338 So.2d 303 (La.App. 2nd Cir. 1976). Both parties were aware that the vehicle was a limited edition and both parties had access to information regarding the sale of this vehicle.

*585 EARNEST MONEY
Defendant insists the $500.00 deposit paid by plaintiff was earnest money. If this deposit is earnest money, defendant can withdraw from the contract by paying double the deposit as provided in LSA-C.C. art. 2463:
"But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to-wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."
This was not, however, a contract to sell providing for earnest money or deposit.[2]
At this point, the sequence of events surrounding the contract to sell becomes important. The testimony of Robert Campbell and of plaintiff establishes the date of the contract to sell as sometime shortly before January 11, 1978. The vehicle was ordered by defendant on the special order form on January 11, 1978. The deposit of $500.00 was requested of plaintiff by Robert Campbell on January 13, 1978 and furnished by check on January 14, 1978. Clearly, a binding contract to sell without provisions for a deposit was entered into prior to January 11, 1978. At this point both parties to the contract were bound to perform. This promise to sell was not "made with the giving of earnest."
The request for a deposit several days after entering into a contract to sell did not affect the obligation undertaken by parties. This is evident from the testimony regarding the intent of the parties. Both plaintiff and Robert Campbell indicated the reason for the deposit was to insure performance on the part of both parties. After the contract to sell is entered into by the parties any amount of money paid by the purchaser can only be a partial performance on his part unless the parties agreed to modify the terms of the original contract. There is no evidence of any agreement to modify the original contract.

DAMAGES
LSA-C.C. art. 1934 provides for damages for breach of contract in pertinent part as follows:
"Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
"1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.
"2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this.
"3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal *586 gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
It is well settled law that the proper measure of damages for breach of contract to sell personal property is the difference between the contract price and the market price of the goods on the date delivery should have been made. Pepper v. Katz, 77 So.2d 891 (Orl.La.App.1955). The trial judge placed a $35,000.00 market value on the vehicle on the date delivery should have been made. This value less the contract price of $14,054.86 equals $20,945.14. We do not find any evidence in the record on which the trial judge based his $35,000.00 figure. In absence of such evidence, the trial judge's "much discretion" may be disturbed. Regans v. Aetna Casualty and Surety Company, 308 So.2d 898 (La.App. 2nd Cir. 1975).
The record indicates that the management of defendant placed an ad in the Wall Street Journal for the sale of the vehicle for $30,000.00 or best offer. Plaintiff believes that the Indy Pacer Corvette was worth between $25,000.00 and $30,000.00. Jan Stipelcovich, the only expert to testify regarding valuation, placed the average value in the $25,000.00 range. Based on the evidence in the record we find the market value of the vehicle on the date of delivery to be $25,000.00. The difference between this value and the contract price is $10,945.14.
Plaintiff argues that he is also entitled to profits he could have made from resale of the Indy Pacer Corvette. According to plaintiff's testimony, he had anticipated holding the vehicle as part of his collection for appreciation. He estimated the value in five years to be around $50,000.00. Jan Stipelcovich estimated the value in 5 years to be $48,000.00 to $50,000.00. Damages for lost profits are recoverable under C.C. art. 1934. While plaintiff is not required to establish these lost profits with absolute certainty, neither can they be conjectural. Southern Television Electronics v. L.O.D. Reed, 244 So.2d 624 (La.App. 4th Cir. 1971). Damages in this instance for lost profits are purely speculative and cannot be awarded.
The trial judge correctly found that "there was a willful and deliberate bad faith breach of contract on the part of the top management personnel of Mike Persia Chevrolet Company, Inc." When a contract is breached in bad faith the party guilty of that bad faith breach is liable for all immediate and direct damages. LSA-C.C. art. 1934(2). Plaintiff submits because of this bad faith breach defendant is liable for loss of intellectual enjoyment as well as mental anguish, emotional distress and inconvenience. Non-pecuniary damages for breach of contract are recoverable when a principal or exclusive object of the contract is intellectual enjoyment. Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La. 1976). Plaintiff, according to his testimony, anticipated storing the vehicle for resale at a later date. Hopefully, the appreciation of the vehicle would have resulted in some profit. We believe plaintiff's purpose in purchasing the Indy Pacer Corvette was purely economic. Intellectual enjoyment was not "an object" of the contract. Plaintiff did not foresee using or showing the vehicle. His plan was merely to store the vehicle for resale at a later date.
Finally, defendant avers that plaintiff did not mitigate his damages. In every case a party who has been damaged has a duty to mitigate his damages. Carey v. Guaranty Insurance Life Company, 292 *587 So.2d 337 (La.App. 2nd Cir. 1974). The record indicates plaintiff did in fact attempt to mitigate his damages by searching for another Indy Pacer Corvette.
The judgment of the district court is amended by reducing the amount of damages from $20,945.14 to $10,945.14 and, as amended, is affirmed. The costs of this appeal are assessed to defendant.
AMENDED AND AFFIRMED.
NOTES
[1] C.C. art. 2462 reads:

"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise cannot be withdrawn before time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
[2] The court recognizes the long-standing jurisprudential rule concerning deposits made pursuant to an agreement to sell being considered earnest in absence of a clearly stated contrary intention. Houston v. Edgemon, 367 So.2d 151 (La.App. 2nd Cir. 1979). We perceive, however, a vast difference between deposits made pursuant to an agreement and an agreement to make a deposit after the contract to sell is already in existence.