800 So.2d 932 (2001)
PIONEER VALLEY HOSPITAL, INC.
v.
ELMWOOD PARTNERS, L.L.C.
No. 01-CA-453.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2001.
*933 Stephen I. Dwyer, Susanne Cambre, Scott M. Cullen, Dwyer & Cambre, Metairie, LA, Counsel for Elmwood Partners, L.L.C., Defendant-Appellant.
Philip K. Jones, Jr., Dena L. Olivier, Liskow & Lewis, New Orleans, LA, Counsel for Pioneer Valley Hospital, Inc., Plaintiff-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
This appeal arises in a suit by a seller of a medical office building against the purchaser to recover unpaid amounts under a promissory note and to enforce its vendor's lien and mortgage against the property. The purchaser appeals rulings that granted the seller's motion for summary judgment and dismissed the purchaser's reconventional demands. We affirm.
On February 26, 1999, Pioneer Valley Hospital, Inc. sold certain property in Jefferson Parish, Louisiana to Elmwood Partners, L.L.C., in an Act of Credit Sale with Vendor's Lien and Mortgage.[1] The sale price was $14,050,777.00. Elmwood paid $1,500,000.00 at the act of sale and signed a promissory note in favor of Pioneer for the balance ($12,550,777.00). Under the act of credit sale Elmwood mortgaged the property to Pioneer and assigned to Pioneer all contracts of lease covering the property.
The promissory note provided that an interest payment of $502,031.00 was due on August 26, 1999 and that payment of the balance of the principal and accrued interest was due on February 26, 2000.
On November 5, 1999 the note was amended in an allonge, which acknowledged Pioneer's receipt of $70,000.00 from Elmwood in partial payment of the interest installment of $502,031.000 that was due on August 26, 1999.[2] The allonge provided for application of the partial payment against the interest installment, leaving a remaining interest installment balance of $432,031.00. The allonge further provided that the remaining interest installment, with interest thereon of $26,454.50 calculated at the rate of 15% per annum, was due and payable on February *934 26, 2000, at the same time the entire balance of principal and accrued interested owing under the note was due and payable.
On April 17, 2000 Pioneer filed a petition for a money judgment and for recognition of its vendor's lien and mortgage, as well as an ex parte motion for a writ of sequestration and for appointment of a keeper. Pioneer alleged that Elmwood had defaulted on the note by failing to pay it on February 26, 2000 when due and had failed to cure the default within ten days; therefore, Pioneer asserted, a default had occurred that entitled Pioneer to judgment. The district court granted the motion for sequestration and appointed Pioneer as the keeper for the property.
Elmwood filed an answer denying each of the allegations of the petition and generally asserting all affirmative defenses set out under La.C.C.P. art. 1005.
Pioneer filed a motion for summary judgment. Before the motion for summary judgment could be argued, however, Elmwood filed a reconventional demand.
In the reconventional demand Elmwood asserted that due to a restrictive covenant expressly identified and described in the act of sale, the fair market value of the property subject to the covenant was far less than the sale price.[3] Elmwood alleged that Pioneer knew this effect, but failed to disclose it to Elmwood. Elmwood claimed it had received inadequate consideration for its purchase of the property and execution of the note. It sought rescission of the sale, return of the cash portion of the sale price, and cancellation of the promissory note.
Pioneer filed an exception of no cause of action to the reconventional demand, asserting that Elmwood's error as to the value of the property it had purchased is an error of judgment for which the law furnishes no relief.
Prior to argument of the exception Elmwood filed a supplemental and amending reconventional demand, which reiterated the facts stated in the original reconventional demand and asserted that these constitute a redhibitory defect under La.C.C. art 2520 et seq.
The trial court heard argument on the exception, but held the matter open to allow Elmwood to re-amend the reconventional demand.
Elmwood then filed a second supplemental and amending reconventional demand, alleging that Pioneer had committed fraud because it "knew the effect of the Covenant on the fair market value of the property because it had engaged in similar sales containing similar covenants and knew the effect of such a covenant on the fair market value of property," that Pioneer concealed that information with the intent to defraud Elmwood, and that Pioneer defrauded Elmwood as a result of its concealment of such information.
Pioneer then filed another exception of no cause of action. On September 27, 2000 the trial court sustained Pioneer's exception of no cause of action and dismissed the reconventional demand as amended by both supplemental and amending reconventional demands. The court refused to certify the interlocutory judgment for immediate appeal under La.C.C.P. art.1911.
*935 Thereafter the motion for summary judgment came for hearing. On November 27, 2000 the trial court granted the motion for summary judgment and rendered judgment in favor of Pioneer, in the principal amount of $12,550.777.00 plus accrued interest of $1,683,989.55 through November 15, 2000, and the principal amount of $219,626.34 plus judicial interest from the date of judgment until paid, plus attorney's fees and costs. The judgment recognized the mortgage against the property as valid and perfected and maintained the writ of sequestration previously issued. Finally, the court designated the summary judgment as final for purposes of appeal and decreed that the judgment dismissing the reconventional demand be incorporated into it.
Elmwood appeals the granting of the exception of no cause of action, the dismissal of its reconventional demands, and the summary judgment in favor of Pioneer.[4]
Elmwood argues that the trial court erred in sustaining the exception of no cause of action because its allegations afforded it a remedy in the law. It contends that the court erred in granting summary judgment because its reconventional demand raised a material issue of fact and that dismissal of the reconventional demand precluded it from discovering material issues of fact that could have precluded summary judgment. Finally, Elmwood asserts that Pioneer failed to meet its burden of proof for summary judgment.

Exception of No Cause of Action
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.... No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. Code Civ.Proc. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.
Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993).
Elmwood contends that Pioneer failed to disclose the fair market value of the property subject to the covenant and concealed information it had regarding the effect of the covenant on the fair market value, resulting in Elmwood's failure to receive adequate consideration for the property. Elmwood cites two cases from this Circuit as supporting its position.
In Gisclair v. Matmoor, Inc., 537 So.2d 876 (La.App. 5 Cir.1989), writ denied, 541 So.2d 901 (La.1989), and Creppel v. Von Hoene, 575 So.2d 514 (La.App. 5 Cir.1991), writ denied, 577 So.2d 51 (La.1991), this Court upheld rescission of sales of land that had been designated as wetlands, making it unfit for the buyers' intended uses. In the Gisclair case the seller did not know of the wetlands designation; in Creppel the seller knew of it, but failed to disclose it. Nevertheless, we upheld the trial courts' findings that the wetlands designations were errors of fact that vitiated *936 consent and, therefore, the buyers were entitled to rescind the sale. Gisclair, 537 So.2d at 880, and Creppel, 575 So.2d at 516.
We find Gisclair and Creppel distinguishable, however. In both those cases the vendor failed to disclose a designation of the property that had a material bearing on its use. Here, the restrictive covenant was part of the act of sale. The effect of a property use restriction on fair market value of property is not a matter a seller is obligated to disclose under Louisiana law.
"Fair market value has consistently been defined as the price a buyer is willing to pay after considering all of the uses that the property may be put to where such uses are not speculative, remote or contrary to law." Exxon Pipeline Co. v. Hill, 00-2559 (La.5/15/01), 788 So.2d 1154, 1157-1158. Similarly, La.R.S. 47:2321 defines "fair market value" for purposes of ad valorem taxation as follows:
Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
Thus, it is the very nature of "fair market value" that it be a price negotiated between informed parties, where the purchaser has "knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used."
However, we find no requirement in our law that the seller inform the buyer of the fair market value of a property. As long as all facts bearing on the nature of a property are disclosed, the effect of those facts is left for a buyer to determine. "[E]rror as to the value of land, which is the object of the contract, is not error of fact, but error of judgment, for which the law furnishes no relief...." Davis v. Lacaze, 181 La. 75, 79, 158 So. 626, 627 (La.1935).
"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La.C.C. art.1953. However, "[f]raud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." La.C.C. art.1954. "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." La.C.C. art.1955.
Fraud or misrepresentation with respect to the value of the object of the contract is not such an artifice as will invalidate the agreement, if the purchaser might with ordinary attention have detected the falsehood. Jackson v. Fontenot Bldg., Inc., 314 So.2d 516, 521-522 (La. App. 1 Cir.1975), writ denied, 319 So.2d 442 (La.1975).
A number of Louisiana cases have decided that misrepresentations as to value do not constitute fraud sufficient to set aside a contract. Zadeck v. Arkansas Louisiana Gas Co., 338 So.2d 303, 307 (La.App. 2 Cir.1976), citing Wessel v. Union Savings & Loan Ass'n, 198 La. 219, 3 So.2d 594 (1941); Succession of Grivaud, 192 La. *937 181, 187 So. 284 (1939); Davis v. Lacaze, supra.
Failure of one of the parties to anticipate the value of the property will not render void a complete contract. Stipelcovich v. Mike Persia Chevrolet Co., Inc., 391 So.2d 582, 584 (La.App. 4 Cir. 1980).
Where the means of ascertaining the value of property are equally available to both parties, a sale may not be set aside because information relating to its value was withheld by either party. Forsman v. Mace, 111 La. 28, 35 So. 372 (1903); La Croix v. Recknagel, 230 La. 842, 89 So.2d 363 (1956); White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2d Cir., 1974).
Zadeck v. Arkansas Louisiana Gas Co., supra.
Similarly, Elmwood's first supplemental and amending reconventional demand failed to state a cause of action in redhibition because a redhibitory defect is a not only non-apparent defect, but also a physical defect such as an imperfection, deformity, lack of necessary components, or lack of quality. Ezell v. General Motors Corp., 446 So.2d 954, 956 (La.App. 3 Cir. 1984). The restrictive covenant itself was in the act of sale and, thus, Elmwood knew or should have known of it. Further, the covenant does not relate to a physical characteristic of the property. It cannot, therefore, be considered a redhibitory vice.
Finally, Elmwood failed to state a cause of action in fraud, because Pioneer had no duty to disclose its opinion as to the fair market value of the property, nor did it have a duty to disclose any special knowledge it may have had regarding market conditions that would impact the value of the property. "To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information." Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La.1992).
Thus, the trial court did not err in granting Pioneer's exception of no cause of action.

Motion for Summary Judgment
Elmwood argues that the granting of the exception of no cause of action prevented it from asserting facts that create genuine issues, which would preclude summary judgment. Specifically, Elmwood relies on its assertion in the reconventional demand that Pioneer failed to disclose the fair market value of the property subject to the covenant and, in fact, concealed information it had regarding the effect of the covenant on the fair market value.
Because we have already ruled that the Elmwood's reconventional demand failed to state a cause of action, this argument is moot.
On the face of the motion for summary judgment, Pioneer was entitled to judgment. It presented a prima facie case of its right to recover on the note, including Elmwood's execution of the note and act of sale, its defaults on the obligations, and the amounts due under the instruments. Elmwood disputed none of these facts and the facts it attempted to establish were not material to Pioneer's right to recover on the documents. Thus, there was no basis on which the trial court could deny summary judgment.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellant, Elmwood Partners, L.L.C.
AFFIRMED.
NOTES
[1] According to appellee's brief, the property is commonly known as the Elmwood Medical Center Office Building and Hospital at the municipal addresses of 1201 and 1221 South Clearview Parkway, Jefferson, Louisiana.
[2] An allonge is "[a] piece of paper annexed to a ... promissory note, on which to write endorsements for which there is no room on the instrument itself. Such must be so firmly affixed thereto as to become a part thereof...." Black's Law Dictionary 70 (5th ed.1979).
[3] The restrictive covenant, contained in Article 3.11 of the Act of Credit Sale, prohibits use of the property for numerous individually-listed medical and related purposes, provides that the restrictive covenant shall be in effect for 50 years or as long as allowed by law, and states that the covenant shall run with the land and be enforceable by the vendor and his assigns.
[4] In its brief, Pioneer relates that after Elmwood filed its motion for appeal, a foreclosure sale was scheduled for April 11, 2001, but was canceled on April 10, 2001 when Elmwood filed a voluntary petition for Chapter 11 reorganization in bankruptcy court. The record in this matter was lodged on April 24, 2001 and briefs filed by the parties in June and July, 2001. However, Elmwood has not mentioned a bankruptcy filing, neither party has provided us with documentation regarding such action, nor has either claimed benefit of stay under 11 U.S.C.A. § 362. Accordingly, we find no reason to stay the appeal.