537 So.2d 876 (1989)
Clyde A. GISCLAIR, et ux.
v.
MATMOOR, INC., et al.
No. 88-CA-591, 88-CA-592.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
Rehearing Denied February 27, 1989.
Writ Denied April 21, 1989.
*877 William R. Campbell, Jr., Michael S. Fawer, PLC, New Orleans, for plaintiffs-appellees.
J.B. Kiefer, Anne W. Schneider, Dean R. Yellin, Metairie, for defendants-appellants, Laura Larmeu Oliveira, Marion P. Guirovich, Audrey Larmeu Simoneaux, Dr. Francis T. Rene, Dorothy M. Mathews, Lynne S. Mathews, Elaine Mathews Briggs and Matmoor, Inc.
Before BOWES, GAUDIN and GOTHARD, JJ.
BOWES, Judge.
Appellants Matmoor, Inc., Elaine M. Briggs, Marion P. Guirovich, Audrey Simoneaux, Dr. Francis T. Rene, Lynn S. Mathews, Dorothy M. Mathews, Ruth M. Mathews and Laura L. Oliveira (hereinafter Matmoor) appeal a judgment of the district court in favor of plaintiffs, Clyde A. Gisclair, husband of/and Sylvia Gisclair (hereinafter Gisclairs) finding that no valid contract of sale existed between plaintiffs/buyers and defendant/sellers. An exception of prescription has also been filed in this court by appellants. We affirm the judgment of the district court and overrule the exception of prescription filed here.
On February 17, 1983, the plaintiffs, Gisclairs, agreed to purchase certain unimproved property, located along U.S. Highway 90 in St. Charles Parish, from Matmoor. After a discussion with a neighboring property owner that the land might be "wetlands", Mr. Gisclair telephoned Lee Isolani, the real estate agent for Matmoor, and reiterated to her that he wanted commercial property, not wetlands. Mrs. Isolani assured Mr. Gisclair that the property was not wetlands and, to emphasize and assure this condition, on February 28, 1983, a second agreement to purchase was prepared by Mrs. Isolani and brought to Gisclair and was signed with the additional condition that the sale was contingent on the property being zoned C-2 for heavy commercial purposes.
On April 29, 1983, the Gisclairs purchased the unimproved property for the sum of $71,820.00 with an initial payment of $14,364.00, plus a promissory note for the balance in the amount of $57,456.00. After the sale, plaintiffs began placing various commercial improvements on the land, with a "revokable" permit from the Corps of Engineers. At that point, in September of 1984, as the improvements were underway, the United States Corps of Engineers informed the Gisclairs that their property was designated as "wetlands" by the Department and therefore no further commercial development could be made. In December, 1984, the Gisclairs filed suit against Matmoor alleging that the designation of the property as wetlands was a defect, making the property unusable for its intended purposes, and that they were entitled, in redhibition, to a return of the portion of the purchase price already paid, as well as to damages for improvements made by plaintiffs, for interest, and attorney fees. They prayed that the sale be declared null and void; alternatively, they prayed for judgment declaring them owners of the property free and clear of any balance due.
On June 6, 1985, Matmoor filed a petition for executory process alleging that a balance of $55,471.53 was due and owing on the mortgage (the Gisclairs had ceased making payments on the note from the date they discovered the property was "wetlands"). In response, the Gisclairs obtained a temporary restraining order enjoining Matmoor from proceeding; further, the Gisclairs alleged several defects in the credit sale which would preclude executory process. Trial on the merits was held on February 19, 1988.
Following trial, the court rendered judgment in favor of the Gisclairs as follows:
(1) That no valid sale or contract existed between plaintiffs/buyers and defendants/sellers regarding the sale of the land in question, that the defendants/sellers of the land must return all monies paid to them both in downpayment and monthly payments on the note, totalling $49,539.57 and *878 then plaintiffs/buyers would return ownership of the land back to the defendants/sellers.
(2) That in consideration of the monies already paid by plaintiffs/buyers the defendants/sellers can present the plaintiffs/buyers with full title to the land and the difference between the amount paid by the defendants/sellers and the finding of this Court of the value of the property which is $8,677.00.
(3) It is the judgment of this Court also that an expert fee of $2,500.00 be paid by the defendants/sellers to plaintiffs'/buyers' expert, Mr. Oubre.
On appeal, defendants argue that classifying of the property by the Corps of Engineers as "wetlands" was not a redhibitory defect and that, even if it was, an action in redhibition had prescribed. In connection with this argument, an exception of prescription has been filed in this court (and not before this in the district court).
The Fourth Circuit considered a very similar situation in Louviere v. Meteye, 260 So.2d 377 (La.App. 4 Cir.1972). In that case, plaintiffs entered into an agreement to purchase property from the defendant conditioned on the property being zoned "C-2 Commercial". After the purchase, it was discovered that the property was zoned for residential use only. The Planning Department of Jefferson Parish had written plaintiff a letter stating that certain property adjacent to the land in question was zoned C-2, and plaintiff believed his property was within the bounds described in the letter. In finding that the action was not one in redhibition, the court stated:
Defendant contends that this action is governed by the articles of the Louisiana Civil Code which concern redhibition, LSA-C.C., Articles 2520 et seq., and that the prescriptive period of one year must apply and plaintiff's suit be dismissed. We do not agree. In order for redhibition to apply there must be a vice or defect in the thing sold which renders it useless, or so inconvenient and imperfect that it is presumed that the buyer would not have purchased it if the vice or defect was known, [LSA-C.C. Article 2520], the essential element being a vice or defect in the object sold. The fact that the property was not zoned as the buyer wanted is not a defect or vice within the meaning intended by the articles of redhibition. The parties to the present suit were laboring under a mistake or error that more properly gives rise to rescission under LSA-C.C., Articles 1821, et seq.
For an error to invalidate a contract it must be interrelated to the principal cause for making the contract. LSA-C. C. Article 1823. The principal cause for making this contract for the sale of land was the desire to use it for commercial purposes. Plaintiff's sole reason for purchasing this land was for the development of a commercial enterprise. Clearly indicative of this is the condition written in the agreement to sell that the property be zoned "C-2 Commercial".
Where the vendee labors under an error fact as to the mistaken belief of a property's zoning restriction and that such belief being a principal cause of the sale is justifiable in relation to the circumstances surrounding the case, then rescission of the contract may be obtained. C.H. Boehmer Sales Agency v. Russo, 99 So.2d 475 (La.App., Orleans, 1958); Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954).
Also, in Dawley v. Sinclair, 419 So.2d 534 (La.App. 5 Cir.1982), a panel of this court, citing Louviere, supra, stated:
"However, where the parties are laboring under a mistake or error as to the zoning classification, there may be the lack of consent necessary to confect a valid agreement and hence grounds for a rescission of the sale under LSA-C.C. articles 1821, et seq."
The trial court, by its finding in oral reasons, that there was never a valid contract because there was no meeting of the minds and, therefore, plaintiff is entitled to rescind the sale, granted relief under the contract theories of rescission, not redhibition. The petition, with its allegations and *879 prayer for relief, sufficiently state a cause for relief under the theory of rescission to make the judgment of the trial court viable.
LSA-C.C.P. art. 862 states:
Relief granted under pleadings; sufficiency of prayer
Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief. [Emphasis added]
LSA-C.C.P. art. 865 holds:
Construction of Pleadings
Every pleading shall be so construed as to do substantial justice.
Louisiana has fact pleadings and it is not necessary to plead the theory of the case in a petition. Kizer v. Lilly, 471 So.2d 716 (La.1985). Thus, the "precise theory" of the case need not be expressed in the petition; as long as sufficient facts are alleged to establish a cause of action for the plaintiff, we may grant the relief sought. State Bank of Commerce v. Demco of La., Inc., 483 So.2d 1119 (La.App. 5 Cir.1986). Courts should construe pleadings in such a manner as to achieve substantial justice. La.C.C.P. art. 865. In order to arrive at the truth and avoid miscarriages of justice, harsh, technical rules of pleading are not favored in Louisiana. Courts must look beyond the style and caption of pleadings to determine their true nature. Recovery may be granted under any legal theory justified by the facts pled in the petition. Succession of Stevenson, 492 So.2d 100 (La.App. 1 Cir.1986).
We find no error in the finding of the trial court that rescission was the proper basis of relief in the present case, because of the failure of the parties to have a meeting of the minds, i.e., vitiated consent. Therefore, appellants arguments with reference to redhibition, redhibitory defects, and prescription of an action in redhibition become irrelevant. Accordingly, we overrule the exception of prescription filed in this court by appellants.
The evidence supports the findings of the trial court, in its oral reasons for judgment, that:
(1) "The agreements to buy were certainly predicated and conditioned upon the fact that the property be C-2 commercial property ... certainly you intend that when you buy commercial property that you would be able to use the property for commercial purposes."
(2) "Mr. Gisclair's property was not useable, not through any fault of the Oliveiras [Matmoor] nor through any fault of Mrs. Isolani [the real estate agent]."
(3) "Mr. Gisclair thought he was buying C-2 property...."
(4) "... the court finds that there never was a meeting of the minds. There never was a valid contract confected. And the buyer in this particular case is entitled to rescind this sale...."
The former codal articles on error as vitiating consent have been reenacted in the present LSA C.C. Arts. 1948, 1949, and 1950 as follows:
Art. 1948. Vitiated Consent
Consent may be vitiated by error, fraud, or duress.
Art. 1949. Error vitiates consent
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Art. 1950. Error that concerns cause
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
Mr. Gisclair testified that he was very specific in wanting to purchase property for commercial purposes, and the agreement to purchase was conditioned on the property being zoned "C-2", but he *880 stressed he wanted it useable for C-2 heavy commercial. Having been contacted by a neighboring property owner, who informed him after the first agreement to purchase was signed that there was a question as to all the surrounding property being designated as "wetlands," he promptly got in touch with the agent, Mrs. Lee Isolani, who then drew up a new, revised, contract to require C-2 property in order to assure Gisclair of the character and usefulness of the property for heavy commercial industry. Nothing could have been any clearer to express Gisclair's intention and the consent of the defendants to this intention. Mrs. Isolani also assured Gisclair that there was no problem with his property being considered "wetlands," and that the planning department in St. Charles Parish had verified that the property was zoned "C-2." The testimony of Mrs. Isolani was to the same effect, emphasizing that she did not know of the "wetlands" description.
It also appears clear from the record that although there was some confusion, the land was designated "wetlands" at the time of the sale, though the court found that neither party was so aware. Mr. J. Bradley Oubre, plaintiff's expert appraiser, testified that the property had been designated as wetlands at least as far back as 1980, but that even very knowledgeable buyers were unaware of the "wetlands" problem in 1983. However, he also testified that he spoke with Mrs. Isolani and warned her about the possible problem with the entire tract of land in question, and cautioned her to check with the Corps of Engineers prior to any sale of any of this property.
The facts and circumstances of this case compel us to reach the inescapable conclusion that the principal cause for this contract of sale was to develop it for C-2 (heavy) commercial use, that such development was the Gisclair's sole purpose for purchasing this land, and that both the defendants and their agent, Mrs. Isolani, were aware of and consented to this. Therefore, the prior designation as "wetlands" with its inherent restrictions on commercial development is ample reason for rescission of the contract of sale under the above quoted law and jurisprudence.
Accordingly, the judgment of the trial court rescinding the sale is affirmed. The alternative granted by the trial court appears to be permissible under La.C.C. 1952, which reads as follows:
A party who obtains rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error.
The court may refuse rescission when the effective protection of the other party's interest requires that the contract be upheld. In that case, a reasonable compensation for the loss he has sustained may be granted to the party to whom rescission is refused.
In any case, no other portions of the judgment have been appealed. Therefore, the judgment of the trial court is affirmed and the exception of prescription is overruled. Appellants are taxed with all costs of this appeal.
AFFIRMED.