Dear Mr. Braud:
You have requested the opinion of this office regarding the consequences of a situation arising out of the lease of certain land owned by the Plaquemines Parish Government to a private entity. Apparently, among the uses advertised for the land in question are several uses which are in direct conflict with certain restrictions on use stipulated when the property was donated to the parish. This conflict was not discovered until the new Parish Council took office which was some time after the lease had been executed with the successful bidder. Your letter poses the following questions:
 Does the Constitution or any statutory law prohibit the Council from passing an ordinance which would:
 (1) authorize mutual termination of the lease;
 (2) appropriate funds from the Plaquemines Parish Government's general fund to reimburse the lessee for rental payments made; and
 (3) appropriate funds to reimburse the lessee for all out-of-pocket expenses incurred for leasehold improvements since the lease has been in place.
We will address each of these issues separately to consider relevant legal authority applicable to your several concerns.
1. Termination of the lease.
It is clear that the ill-fated lease may be terminated by mutual consent. The case of Gisclair v. Matmoor, 537 So.2d 876 (La.App. 5th Cir. 1989), is somewhat analogous to the matter at hand. InGisclair, the plaintiff petitioned the court to rescind a sale of land. Plaintiff entered into negotiations with defendants to purchase land for commercial use. Upon assurances from the defendants that the land in question was not designated as "wetlands", the plaintiff proceeded to purchase the land in question. After the plaintiff began making improvements to the land, he was informed by the Army Corps of Engineers that the land was indeed designated as "wetlands" and was thus barred from commercial development. Under Louisiana law a contract is null and void if it lacks the requirements for its formation. LSA-C.C. art. 2029. Those requirements are capacity, consent, cause and a lawful/possible object. LSA-C.C. arts. 1918, 1927, 1966 and 1971. In the case at hand, consent and cause are vitiated by the mutual mistake of the parties.
Cause is defined as the reason why a party obligates himself. LSA-C.C. art. 1927. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art. 1949, Baro Controls, Inc. v. Prejean, 93-0586 (La.App. 1st Cir. 3/11/94), 634 So.2d 46. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object of or a substantial quality of that thing, . . . or should in good faith have regarded as a cause of the obligation. LSA-C.C. art. 1950.
The discovery that the land in question was subject to a restrictive clause, stipulated in its donation, contradicted the lessee's reason for obligating himself and thus constitutes an error in consent pursuant to the principal cause. Accordingly, under the aforementioned jurisprudence and law, the lease in question may be terminated by mutual consent.
2. Appropriation of funds to reimburse the lessee for the rental payments made.
Again, there seems to be no legal bar to this proposed action. The appropriate inquiry here is whether the return of funds received as rental payment would be proscribed under the terms of Article VII, Section 14 of the Louisiana Constitution of 1974, which provides in pertinent part:
14. Donation, Loan or Pledge of Public Credit
 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to any person, association, or corporation, public or private.
This office offered a comprehensive examination of Constitution Article VII, Section 14 in Attorney General Opinion 90-651, included in which was the legislative history of this prohibition of any gratuitous acts with public funds. Such prohibitions have been in our state constitutions since 1898. However, there is no reason to conclude that the reimbursement of funds received by the Parish under the terms of a lease which is subsequently found to be invalid is a "loan, pledge or donation of any credit, property or things of value" as contemplated by Article VII, Section 14 of the Louisiana Constitution of 1974. Rather, it appears that such an appropriation by the parish would merely be the payment of a debt arising out of the unfortunate circumstances of this situation. Accordingly, the lease payments received do not fall under any of the prohibitions of Article VII, Section 14, thus removing any constitutional bar to their return to the lessee. However, if the lessee had actual beneficial use of the property for part of the lease period, the rents for that period should not be refunded since to do so would constitute unjust enrichment and a gift of public property.
3. Appropriation of funds to reimburse the lessee for expenses incurred for leasehold improvements.
This also seems to be legally permissible. In Fuller v.Barattini, 574 So.2d 412 (La.App. 5th Cir. 1991), a lessee sued to rescind a lease based on an error as to the principal cause of the lease. Additionally, the lessee requested that the court award the costs incurred in the anticipation of utilizing the leased property for its intended purpose, establishing a night club. The appellate court upheld the trial court's decision to rescind the lease and to award the lessee both previously paid rent and all verifiable construction costs incurred. Also seeGuaranty Savings Assurance Co. v. Uddo, 386 So.2d 670 (La.App. 1st Cir. 1980).
The contract law doctrine of detrimental reliance provides for recovery of expenses incurred or the damages suffered when one party reasonably relied on the promise of another in incurring debt. LSA-C.C. 1967. Although the word "promise" is used, detrimental reliance also applies when actual contracts have been executed. As such, this doctrine clearly applies in this situation and is supported by the jurisprudence cited above as authority for reimbursement of rents paid as well as for reimbursement of expenses incurred in preparation for using the leased site.
It is not our advice that these payments should be made, but only that they may be made. The standard of proof for such damages should be equivalent to the proof required for damages in a court of law, taking into consideration the character of the expenditures and their essential relationship to the development of the property and the reasonableness and timeliness of the expenditures. Ultimately, the decision to make such payments is a discretionary one for the parish governing authority to be made in view of complete factual and legal considerations.
Therefore, it is our opinion that the answer to each of the three issues raised in your request and set forth at the beginning of this opinion is in the affirmative. I trust that this answers your inquiry. Please let us know if we may be of any further assistance in this matter.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ GLENN R. DUCOTE
Assistant Attorney General
RPI/GRD/cla