# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 10-1384

**TRI-LAKE OF LOUISIANA, LLC, ET AL.**

**VERSUS**

**COUTEAU PLATEAU, LLC**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18350
HONORABLE PENELOPE Q. RICHARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Steven Broussard**
**Broussard & Hart, LLC**
**1301 Common Street**
**Lake Charles, LA   70601**
**(337) 439-2450**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Couteau Plateau, LLC**

**Thomas J. Gayle**
**Gayle Law Firm**
**Post Office Box 3190**
**Lake Charles, LA   70602-3190**
**(337) 494-1220**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
   **Tri-Lake of Louisiana, LLC**
   **Wilson LeJeune**

AMY, Judge.

The plaintiffs filed suit seeking the return of the purchase price of a mobile home. The defendant alleged that the underlying contract was valid and that the risk of loss for the destruction of the mobile home fell on the purchaser. After trial, the trial court entered judgment in favor of the plaintiffs and awarded the purchase price of the mobile home. The defendant appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The defendant, Couteau Plateau, LLC, owns a camp in Cameron Parish. According to Frank Sadler, a manager/member of Couteau Plateau, the camp was destroyed by Hurricane Rita in 2006. Sadler testified that he arranged for the purchase of a mobile home to be used as a temporary camp while the permanent structure was being rebuilt. In the summer of 2008, Couteau Plateau decided to sell the mobile home.

Tri-Lake of Louisiana, LLC and Wilson LeJeune, plaintiffs, were interested in purchasing a mobile home. LeJeune is a manager/member of Tri-Lake. LeJeune testified that, after he viewed the mobile home, Tri-Lake agreed to purchase it. The parties signed the bill of sale and the title on August 22, 2008 and LeJeune tendered twenty-five thousand dollars as the purchase price. LeJeune testified that he attempted to have the mobile home titled in Tri-Lake's name on August 26, 2008. According to his testimony, he learned that, in addition to other defects, significant taxes were owed on the defendant's original purchase of the mobile home.

LeJeune alleges that he contacted Sadler about the outstanding taxes and the parties disputed whether or not taxes were owed on the purchase. According to Sadler, he offered LeJeune a refund of the purchase price and LeJeune refused. According to LeJeune, the matter was left "up in the air." Sadler then left the country

on September 8, 2008 for an extended vacation. Before Sadler returned, Hurricane Ike made landfall on September 12, 2008, and the mobile home was destroyed by its flood waters.

The plaintiffs filed suit, seeking the return of the purchase price due to a mutual mistake in the price. After a trial, the trial court entered judgment in the plaintiffs' favor and awarded the contract price to the plaintiffs. The defendant appeals, asserting the following assignments of error:

No. 1 - The trial court erred in failing to acknowledge when LeJeune refused Sadler's offer of a full refund the day after the sale, LeJeune waived his right to demand a refund once the mobile home was destroyed.

No. 2 - The trial court erred in failing to find there was a valid sale.

No. 3 - The trial court erred in failing to find the risk of loss had transferred to LeJeune at the time the mobile home was destroyed.

No. 4 - The trial court erred in failing to find LeJeune's negligence in failing to timely move the mobile home to a safe haven was the legal cause of its destruction.

No. 5 - Finally, the trial court erred in failing to find no sales tax was owed in connection with the original purchase of the mobile home by Sadler due to the fact that prior to trial Sadler had filed the required Act of Immobilization thereby exempting the mobile home from sales taxes in connection with Sadler's original purchase.

**Discussion**

Three of the defendant's assignments of error are predicated on the assumption that the trial court erred in finding that there was no contract. Before turning to those assignments, we address whether the trial court erred in finding that there was no contract, which the defendant raises in his second assignment.

2

*Sales Taxes*

Relevant to the determination of whether or not a contract existed is the defendant's last assignment of error—that the trial court erred in failing to find that no sales tax was owed because of a late-filed "Act of Immobilization." Upon the filing of an Act of Immobilization, a mobile home ceases to be subject to the taxes due upon movables and becomes subject to the taxes due on immovable property. La.R.S. 9:1149.4. After Hurricanes Katrina and Rita, the legislature allowed retroactive filing of an Act of Immobilization for mobile homes purchased in certain parishes between September 1, 2005 and December 1, 2006. La.R.S. 9:1149.4(C). The Act of Immobilization filed in this case reflects that it was filed in the Cameron Parish records on July 31, 2009.

The defendant argues that the trial court erred in finding that, because the Act of Immobilization could have been filed at any time, no outstanding taxes were owed on the mobile home. The defendant argues that, therefore, the taxes were a "non-issue" in this case. We find the defendant's argument unpersuasive. At the time of the sale, the Act of Immobilization had not been filed. Taxes on the sale of a mobile home are due and owing until the Act of Immobilization is filed. La.R.S. 9:1149.4(B). Thus, at the time of the purported sale, taxes were still owed on the mobile home. Although the Act of Immobilization could have been filed retroactively, it was not filed prior to the destruction of the mobile home. In fact, it was not filed until after the instant suit was filed—almost a year after the destruction of the mobile home. Further, the responsibility to file the Act of Immobilization fell to the defendant, not the plaintiffs. *See Gibbs Constr. Co., Inc. v. Thomas*, 500 So.2d 764 (La.1987) (wherein the supreme court found that a subcontractor could not rely

3

on his own failure to deliver a required letter of credit to defeat his obligations under a contract). Therefore, we find that the trial court did not err in failing to find that no taxes were owed.

This assignment of error is without merit.

*Mutual Error or Mistake*

The defendant alleges that the trial court erred in finding that no valid contract for sale existed.

The requirements for a valid sale are addressed in La.Civ.Code art. 2439, which states that: "Sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale."

Louisiana Civil Code Article 1948 provides that consent may be vitiated by error, fraud, or duress. In order to vitiate consent, the error must concern a cause without which the obligation would not have been incurred and must have been known or should have been known to the other party. La.Civ.Code art. 1949.

> Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.

La.Civ.Code art. 1950.

The determination of the existence of a contract is a finding of fact that will not be disturbed on review unless clearly wrong or manifestly erroneous. *Dubois Constr. Co. v. Moncla Constr. Co.*, 39,794 (La.App. 2 Cir. 6/29/05), 907 So.2d 855.

Here, the trial court found that "there was mutual error as to the purchase price which vitiated Mr. LeJeune's consent to the sale. Thus, there was no valid sale in this

4

case." The defendant argues that the sales tax issue was not substantial enough for Tri-Lake to rescind the sale when the defendant offered to refund the purchase price, and thus, could not have been a cause without which the obligation would not have been incurred.

At trial, LeJeune testified that he agreed to purchase the mobile home for twenty-five thousand dollars. LeJeune's testimony reflects that he considered that he would be able to title the mobile home in Tri-Lake's name for the agreed upon purchase price. Additionally, according to LeJeune, an insurance agent, he would not have been able to obtain insurance on the mobile home until he could title it in Tri-Lake's name and would not have been able to obtain flood insurance for an additional thirty days. He further testified that he was afraid to move the mobile home without insurance.

LeJeune testified that he could have found the money to pay the taxes, but that he did not intend to pay any of the defendant's outstanding taxes because he had not agreed to pay any extra tax. LeJeune did not know how much the outstanding taxes would have been, but he was under the impression that, including interest and fees, they would have totaled in the thousands of dollars.

Sadler testified that he was under the impression that removing the axles and tongue "immoblized" the home for the purposes of exemption from sales tax. He said he was unaware that an Act of Immobilization needed to be filed in order to exempt the mobile home from sales tax. He also testified that he was unaware that he needed to have the title transferred into Couteau Plateau's name and that he believed the bill of sale was sufficient to effect the transfer. Sadler testified that his first conversation with LeJeune was strictly about the price of the mobile home and that Couteau

5

Plateau would accept the risk of loss for Hurricane Gustav. Sadler denied that he spoke with LeJeune about the title or sales tax issue before he left for vacation.

Rather, LeJeune testified that the first time he spoke to Sadler was about the outstanding tax issue and that Sadler asked him if he wanted his "money back." According to LeJeune, he told Sadler that he wanted to work out the tax issue, but that he would "think about it" and get back to Sadler. Sadler testified that LeJeune "refused" his offer of a refund. LeJeune testified that he declined Sadler's offer because the mobile home was a "good deal" and he wanted to try and work things out.

Here, the relevant determination is whether the error with regard to the then-oustanding taxes was sufficient to constitute an error that vitiated consent. In *Levin v. May*, 03-2205 (La.App. 1 Cir. 9/17/04), 887 So.2d 497, the first circuit held that, in the sale of a business, the failure to remit collected sales taxes could constitute an error that concerned cause. The first circuit compared the failure to remit collected sales taxes in that case to the inability to provide merchantable title in the sale of immovable property. *Id.*

Similarly, our review of the record, including the above testimony, as well as the physical evidence and depositions submitted at trial, reveals evidence sufficient to support the trial court's conclusion that neither did the parties intend for LeJeune to be responsible for additional taxes nor would LeJeune have purchased the mobile home if he knew that he would have to pay the taxes. Thus, the trial court was not manifestly erroneous in finding that this error vitiated consent and there was not a valid contract.

This assignment of error is without merit.

*Additional Assignments of Error*

The defendant has asserted three additional assignments of error which are all predicated on the assumption that the trial court erred in finding that no valid contract existed. Because we have determined that the trial court did not so err, those assignments of error are pretermitted.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. All costs of this appeal are assessed to the defendant.

**AFFIRMED.**