# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1408

**DAVID C. SMITH, ET UX.**

**VERSUS**

**JOSEPH ELVY SONNIER, ET UX.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-300-10
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

**Timothy Michael Cassidy**
**Timothy M. Cassidy, APLC**
**P. O. Box 1446**
**Jennings, LA 70546**
**Telephone: (337) 824-7322**
**COUNSEL FOR:**
 **Defendants/Appellees - Joseph Elvy Sonnier and Nelsarine Richard Sonnier**

**Henry Alan McCall**
**Stockwell, Sievert, Viccellio, Clements & Shaddock**
**P. O. Box 2900**
**Lake Charles, LA 70602**
**Telephone: (337) 436-9491**
**COUNSEL FOR:**
 **Plaintiffs/Appellants - David C. Smith and Paula A. Smith**

**THIBODEAUX, Chief Judge.**

In this contract dispute, the plaintiff, David Smith,[1] alleges that the land purchase contract he entered into with the defendant, Joseph Sonnier,[2] should be rescinded due to error, or alternatively, that the property purchased is not fit for its intended use. We disagree. For the following reasons, we affirm the judgment of the trial court.

I.

**ISSUE**

We will consider whether the trial court erred in granting a directed verdict in favor of Mr. Sonnier, and, thus, in failing to rescind the contract.

II.

**FACTS AND PROCEDURAL HISTORY**

In August 2009, Mr. Smith purchased approximately two acres of property in Jennings, Louisiana from Mr. Sonnier for $12,000.00. The contract was prepared by Mr. Smith's attorney. For over forty years prior to the sale, Mr. Sonnier used the property as a landfill. He dumped his own wood waste on the property, and he charged others, including the City of Jennings, a fee for similar activity. During Mr. Sonnier's operation of the landfill, he never obtained a permit to operate a landfill, and he was never aware that he needed a permit to do so. He responded through discovery that he was not aware of any environmental

---

[1]Though both Mr. and Mrs. Smith are named plaintiffs and Mr. and Mrs. Sonnier are named defendants, we follow the lead of the parties' briefs and refer only to Mr. Smith and Mr. Sonnier.

[2]Joseph Sonnier is now deceased. Mr. and Mrs. Smith properly amended their petition to name the Succession of Joseph Elvy as a defendant in this action.

investigations regarding the property.[3] Moreover, he explained in his discovery responses that the Department of Environmental Quality (DEQ) visited the property in 2000, but the agency told him only to clean up hydraulic fluid that was leaking from a bulldozer.

Mr. Smith operates a tree cutting business, and he purchased the property as a disposal site for his wood waste. Both Mr. Smith and Mr. Sonnier knew of Mr. Smith's plans for the property. Mr. Smith testified that at no point did he attempt to obtain a permit to operate the site as a landfill nor did he inquire as to the legality of Mr. Sonnier's operation of the site as a landfill.

Five months after the sale, in January 2010, DEQ visited the property after receiving a complaint. Following the visit, DEQ gave Mr. Smith a "Field Interview Form" which noted that all dumping on the property must stop and the "site must be cleaned up/closed out." In June 2010, DEQ mailed Mr. Smith an "Administrative Order" for assessment and cleanup of the property. Mr. Smith then filed suit against Mr. Sonnier to rescind the sale of the property.

During a bench trial, the trial court heard testimony from Mr. Smith regarding the cause of the contract. Mr. Sonnier's discovery responses supported Mr. Smith's testimony regarding the cause of the contract. Moreover, a former employee of Mr. Sonnier testified that Mr. Sonnier operated the property as a landfill during his ownership. Following the close of Mr. Smith's case, Mr. Sonnier moved for a directed verdict. The trial court granted Mr. Sonnier's motion, reasoning that any defect in the cause of the contract could be cured by

---

[3]Mr. Sonnier died before the start of trial. Mr. Smith failed to depose Mr. Sonnier before his death, so Mr. Sonnier's discovery responses were admitted into evidence.

Mr. Smith.[4] While we disagree with the trial court's reasons, we find no error in the judgment granting a directed verdict to Mr. Sonnier.

## III.

## LAW AND DISCUSSION

### Standard of Review

Again, though the trial court considered and ruled on Mr. Sonnier's motion for directed verdict, the more appropriate procedural device would have been a motion for involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B). This article states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

The court's vast discretion in granting a motion for involuntary dismissal is reviewed under the manifest error standard. *Guidry v. City of Rayne Police Dep't*, 09-664 (La.App. 3 Cir. 12/9/09), 26 So.3d 900.

### Validity of the Contract

Mr. Smith argues that the trial court erred in granting the directed verdict because error in the cause of the contract, or, alternatively, deficiencies in

---

[4]Although a directed verdict was advanced by Mr. Sonnier and granted by the trial court, the appropriate device would have been a motion for involuntary dismissal pursuant to La.Code Civ.P. art. 1672. Thus, we use the standard attendant to Article 1672 in review of this matter.

3

the property's fitness, renders the contract invalid. We disagree with both arguments.

The four elements of a valid contract are: (1) a capacity to contract; (2) mutual consent; (3) an object; and (4) a lawful cause. *Belin v. Dugdale*, 45,405 (La.App. 2 Cir. 6/30/10), 43 So.3d 272. "[A] contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause." *Hoffman v. Craftworld Int'l, Inc.*, 463 So.2d 89, 92 (La.App. 3 Cir. 1985).

A valid sale requires the thing, the price, and the consent of the parties for the perfection of the sale. La.Civ.Code art. 2439. Even when these requirements appear to be satisfied, consent may be vitiated by error, fraud, or duress. La.Civ.Code art. 1948. Error vitiates consent when it concerns a cause without which the obligation would not have been incurred and that cause was or should have been known by the other party. La.Civ.Code art. 1949.

Mr. Smith argues that he only consented to the purchase of the property because of its use as a landfill and that Mr. Sonnier knew that was the sole cause of the contract. He argues that once that use was precluded by DEQ's closure of the property as a landfill, Mr. Smith's consent was vitiated, and the contract should be rescinded. Alternatively, he argues that bilateral error exists which vitiates the contract—both Mr. Smith and Mr. Sonnier were under the mistaken belief that the property could be used as a landfill.

In support of his arguments, Mr. Smith relies on two cases from the fifth circuit—*Gisclair v. Matmoor, Inc.*, 537 So.2d 876 (La.App. 5 Cir.), *writ denied*, 541 So.2d 901 (La.1989) and *Creppel v. Von Hoene*, 575 So.2d 514 (La.App. 5 Cir.), *writ denied*, 577 So.2d 51 (La.1991)—and one case from our

4

court, *Tri-Lake of Louisiana v. Couteau Plateau*, 10-1384 (La.App. 3 Cir. 3/9/11), 59 So.3d 491, *writ denied*, 11-1134 (La. 9/16/11), 69 So.3d 1147. We find that all three cases are distinguishable from the present case.

In both *Gisclair* and *Creppel*, the fifth circuit upheld rescission of sales of land that had been designated as wetlands, making the land unfit for the buyers' intended uses. In the *Gisclair* case, the seller did not know of the wetlands designation; in *Creppel*, the seller knew of it but failed to disclose it. Nevertheless, the courts upheld trial courts' findings that the wetlands designations were errors of fact that vitiated consent and, therefore, the buyers were entitled to rescind the sale. *Gisclair*, 537 So.2d 876, and *Creppel*, 575 So.2d 514.

Similarly, in *Tri-Lake of Louisiana*, a panel of this court held that a sales tax error, namely the fact that taxes were still owed on a mobile home at the time of its sale, vitiated consent and invalidated the sale of the mobile home.

We find *Gisclair, Creppel*, and *Tri-Lake of Louisiana* distinguishable, however. In all of those cases, the defect or hindrance to the property was present at the time of the sale, whether or not it was disclosed to the buyer. Here, however, nothing in the record indicates that the property was not able to be used as a landfill on the date of the sale. Indeed, we have scoured the record for such evidence, but we find none. The record indicates that both parties knew that Mr. Smith was purchasing the property for use as a landfill. Mr. Sonnier admitted that he never applied for a permit to operate the property as a landfill, but no evidence was offered by Mr. Smith to show that Mr. Sonnier required a permit to operate the property as a landfill *on the date of the sale of the property.* The only evidence

5

admitted indicates that a permit was required on the date of DEQ's visit—some five months following the sale of the property.[5]

This failure to meet his burden of proof also affects Mr. Smith's argument that the property was not fit for its intended use. Again, the record provides ample evidence that the property was unlicensed for its intended use five months following the sale, but nothing indicates that it was not fit for its intended use on the date of the sale. We find no merit in Mr. Smith's warranty of fitness argument.

Thus, in reviewing the propriety of the directed verdict in light of the substantive law applicable to Mr. Smith's claims, we find no error in the trial court ruling granting the directed verdict. Mr. Smith simply did not meet his burden of proof. Considering all of the evidence presented by Mr. Smith, he presented no evidence regarding the status of the landfill on the date of sale upon which reasonable people could find that the contract was rendered invalid. Therefore, based on the record before us, we find no merit in Mr. Smith's argument that the trial court erred in granting the directed verdict in favor of Mr. Sonnier.

IV.

## CONCLUSION

For the reasons articulated above, we affirm the judgment of the trial court. Costs of this appeal are assessed against David and Paula Smith.

**AFFIRMED.**

---

[5]We need not belabor the point, but we find this situation analogous to the case of a property owner who buys property zoned for commercial use and then is faced with the re-zoning of the property to his detriment. *See, e.g., Macro Oil Co., Inc. v. City of Breaux Bridge*, 12-932 (La.App. 3 Cir. 2/6/13), __So.3d__.