NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 18-25

THE ACADIANA GAZETTE, INC.

VERSUS

CENTRE MEDIA GROUP, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20156139
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery,
Judges.

AFFIRMED.

**Marie Candice Hattan**
**A Professional Law Corporation**
**110 E. Kaliste Saloom, Suite 101**
**Lafayette, LA 70508**
**(337) 234-0431**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **The Acadiana Gazette, Inc.**
**COUNSEL FOR DEFENDANT IN RECONVENTION/APPELLANT:**
 **Michael Leblanc**

**Larry Lane Roy**
**Elizabeth C. Austin**
**Brown Sims**
**600 Jefferson St., Suite 800**
**Lafayette, LA 70501**
**(337) 484-1240**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **The Acadiana Gazette, Inc.**
**COUNSEL FOR DEFENDANT IN RECONVENTION/APPELLANT:**
 **Michael Leblanc**

**Randal Lee Menard**
**A Professional Law Corporation**
**P. O. Box 80795**
**Lafayette, LA 70598**
**(337) 232-8235**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Teresa Green**
 **Centre Media Group, LLC**

**EZELL, Judge.**

This is an appeal from a judgment which rescinded the sale of the assets of a newspaper due to error because the buyer thought she was buying the corporate newspaper itself and not just its assets. The buyer also appealed the trial court judgment which denied its claims for damages for duress and fraud.

## FACTS

In 2008 Pat Leblanc and Ron Gomez started The Acadiana Gazette, a newspaper in the Lafayette area. In March of 2008, Pat was killed in an airplane crash and his brother, Michael Leblanc, inherited his share of the newspaper. On April 1, 2008, shares of stock in the newspaper were redistributed.

Several years later, Teresa Green and Michael began discussions about the sale of the newspaper. After several meetings, Teresa decided to purchase the newspaper. Centre Media Group, LLC was set up by Teresa to purchase the newspaper. The agreed purchase price was $28,000. The sale took place at Michael's attorney's office on March 30, 2015. Centre made an initial payment of $10,000 by check dated April 10, 2015. Teresa also signed a promissory note for $18,000 payable on or before May 14, 2015, for the remaining balance.

On December 9, 2015, The Acadiana Gazette filed suit against Teresa and Centre for nonpayment of the promissory note. Centre and Teresa filed an exception of improper party and/or a no right or cause of action seeking dismissal of the action, claiming that Centre owned The Acadiana Gazette and that Teresa was the authorized representative of Centre. In response, The Acadiana Gazette argued that the sale was an asset sale and not a stock sale. It claimed that no stock in the newspaper was transferred. The Acadiana Gazette then amended its petition to add a claim for damages caused by Teresa filing documents with the Secretary

of State representing that she was an officer, director, and shareholder of The Acadiana Gazette after she was served with the lawsuit.

Centre and Teresa filed a reconventional demand against The Acadiana Gazette and added Michael as a defendant alleging that they committed fraud and caused her duress during the negotiations of the sale. She further asked for rescission of the sale, claiming she would never have agreed to purchase only the assets of the newspaper and thought she was purchasing the company itself.

Trial of the matter was held on May 16, 2017. The trial court ruled that Teresa thought Centre was purchasing a corporation and not just the assets of the corporation. Although the trial court found no fraud or duress by Michael or The Acadiana Gazette during the sale process, the trial court did find that the sale should be rescinded for error due to consent and cause. Centre and Teresa were found not liable on the promissory note, and The Acadiana Gazette was ordered to return any money paid regarding the original sale of the newspaper. The trial court ordered that the changes made by Teresa with Secretary of State be removed but found Teresa had no malice in making the changes so that The Acadiana Gazette was not entitled to any damages.

The Acadiana Gazette and Michael appealed the trial court judgment asking this court to reverse the judgment rescinding the sale and to find Teresa and Centre liable on the promissory note. Teresa and Centre answered the appeal, claiming that the trial court erred in denying the claim for duress and fraud which occurred during the sale.

**RESCISSION OF SALE DUE TO UNILATERAL ERROR**

The Acadiana Gazette and Michael argue that it was error for the trial court to set aside the sale due to unilateral error by Teresa, acting as representative of

2

Centre, when there was no showing and no finding that a stock sale was the principal cause of the contract and that Plaintiffs knew or should have known of Teresa's misconception.

In reasons for judgment, the trial court stated:

> After trial testimony, reviewing the record and briefs submitted, it is this Court's opinion that common sense dictates that given the price of the sale, $28,000, and the discussion during the negotiations, Teresa Green truly did believe that she was purchasing the corporation. She would not have agreed to pay the corporate taxes the following year had she not owned the corporation. Furthermore, this court did take into consideration that there was no sale of stock in this transaction. However, stock sales are not required to be made of public record. So, it is credible that Teresa Green believed that Michael Leblanc was the sole owner of the Acadiana Gazette, Inc. and that she was purchasing the corporation, including the stock.

"Consent may be vitiated by error, fraud, or duress." La.Civ.Code art. 1948. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1949.

> Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.

La.Civ.Code art. 1950. Comment (c) further explains:

> [R]elief may be obtained when either the things for which a party has contracted or a substantial quality of that thing is different from what he understood it to be at the time of contracting, as when, intending to buy bars of silver, he has unknowingly bought bars of another metal, or when, intending to buy a gold vase, he has unknowingly bought a gold-plated one.

Whether error vitiated consent to a contract resulting in an invalid contract is a finding of fact subject to the manifest error standard of review. *Tri-Lake of*

3

*Louisiana, LLC v. Couteau Plateau, LLC*, 10-1384 (La.App. 3 Cir. 3/9/11), 59 So.3d 491, *writ denied*, 11-1134 (La. 9/16/11), 69 So.3d 1147.

Michael testified that he learned Teresa was interested in purchasing the newspaper from the Mayor of Youngsville, who knew that distribution was down in the Youngsville area. Teresa testified that she called and set up an appointment to meet with Michael. Teresa testified that Michael told her he was the sole owner of the paper, having received it when his brother died. After several meetings, Teresa decided to purchase the newspaper for $28,000. She testified that she thought she was purchasing the corporate newspaper and its assets. She was not aware that she had not purchased the corporation until she received the lawsuit.

The act of sale stated that The Acadiana Gazette, Inc. "hereby sell, conveys, and transfers any and all interests, ownership and rights thereto unto:" Centre Media Group, L.L.C.

the following property and assets, to wit:

> The Acadiana Gazette, Inc., which said newspaper includes all good will [sic], advertising agreements, distribution agreements, newspaper stands and rights to place stands where they are presently located, contracts with present printers, advertising accounts, subscriber lists and agreements, all account names, copyrighted and un-copyrighted stories[,] articles, logos, pictures and writings of any kind or character existing on the date of this sale, March 30, 2015.

The act of sale further provided for payment of taxes as follows: "Taxes for the year 2014 shall be paid from the revenue earned during the year 2014. Taxes for the year 2015 shall be payable by PURCHASER."

Michael testified that he did not represent to Teresa that he was the sole owner of the newspaper. He testified that Ron Gomez and Tawasky Ventroy were also shareholders. He could not remember if he told Teresa he was a shareholder

but told her he had the right to proceed in negotiations for the sale of the newspaper.

Teresa testified that she did not change information on the Secretary of State's website until after she received the lawsuit. She assumed the changes were made when the paperwork was signed at the attorney's office. Even though Teresa admitted that she did not look at The Secretary of State's website, the information on The Secretary of State's website filed into evidence did not indicate any information about the shareholders.

While no stock exchanged hands, the act of sale makes it appear that Teresa is purchasing the corporation and all its assets. The trial court had before it Teresa's testimony as opposed to Michael's testimony that he told her he was the sole owner. Even Michael could not remember if he told her that he was a shareholder. Based on the evidence and testimony, we find no error in the trial court's decision there was unilateral error on the part of Teresa in signing the contract of sale which vitiated her consent.

## FRAUD AND DURESS

In her answer to the appeal, Teresa claims that the trial court erred in failing to find that Michael concealed facts about The Acadiana Gazette and that she was forced to sign the act of sale under duress. When a contract is rescinded for fraud or duress, the other party may be liable for damages and attorney fees. La.Civ.Code arts. 1958 and 1964.

Fraud

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of inconvenience to the other. Fraud may also result from silence or inaction."

5

La.Civ.Code art. 1953. "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La.Civ.Code art. 1957.

Teresa claims that Michael consistently reported to her that the newspaper profited an average of $10,000 a month. She further claims that Michael withheld accounting documents from her until after the sale, knowing that the documents would not support the financial condition of the newspaper as represented by Michael.

Michael testified that he never said the newspaper made $10,000 a month. He stated that he told Teresa that the newspaper grossed about $10,000 a month but had expenses of $12,000 a month. Michael testified that Teresa was excited about purchasing the newspaper and said she was going to turn the newspaper around and make it work. Teresa explained to him that she was referring to improving the paper cosmetically.

Teresa testified that once she decided to purchase the newspaper, she asked for financials from the past three years. Michael testified that he told his staff to give her whatever she needed. Teresa testified that she did receive some paperwork but never received a profit and loss statement prior to the sale.

Dianne Roger, who currently works for Michael and was present when Michael and Teresa negotiated the sale, testified at trial. Teresa agreed that Dianne was present during some of the negotiations. Dianne stated that Michael told Teresa that sometimes the paper made a profit and sometimes it did not, but he never told her that it netted $10,000 a month.

As far as financial documents were concerned, Dianne agreed that Michael told her to give Teresa whatever she wanted. Dianne testified that Teresa never

6

asked for three years of financial documents but instead asked for three months of financial documents. Dianne testified that she gave Teresa a packet of information prior to the sale which included bank reconciliations, open invoices, accounts receivable, aging summary, transition list by vendor itemized billing, and subscribers. Dianne gave her three months as requested, including profit and loss documents which were provided later. Dianne testified that she gave Teresa profit and loss statements on more than one occasion. She printed them for Teresa twice, and Teresa's boyfriend came by the office on one occasion and got them. Dianne stated that she never refused Teresa any documents that she requested.

The trial court found that Teresa's claims of not receiving the requested financial statements "was refuted." "[C]redibility determinations are within the district court's discretion and should not be disturbed upon review where conflict exists in the testimony absent a determination that the district court abused its discretion." *Lomont v. Bennett*, 14-2483, p. 17 (La. 6/30/15), 172 So.3d 620, 633, *cert. denied*, ___ U.S. ___, 136 S.Ct. 1167 (2016). Clearly, Teresa's claim she did not receive the requested documentation was opposite to the testimony of Dianne. Dianne confirmed that Michael told her to give Teresa whatever she wanted, and Dianne testified she did as requested. The trial court could also assume that Teresa had knowledge of the financial condition of the newspaper by her statement that she was going to turn the newspaper around. Based on the testimony and evidence, we find no error in the trial court's finding that Teresa failed to prove by a preponderance of the evidence that fraud occurred prior to the sale.

Duress

Teresa's claim for duress also centers around her claim that that she did not receive the requested financial documents. She argues that she told Michael's

attorney that she would not close the sale until she received the requested documents. Teresa claims that the attorney told her that if she did not sign at that time, there would be no sale. Teresa claims she signed the documents under duress.

"Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." La.Civ.Code art. 1959. "A threat of doing a lawful act or a threat of exercising a right does not constitute duress." La.Civ.Code art. 1962.

The trial court noted that Teresa chose to go forward with the sale despite having concerns. An attorney was not present on Teresa's behalf during the sale. However, Teresa was conferring with her attorney before the sale. Teresa's attorney did send some requested information to Michael's and The Acadiana Gazette's attorney before the sale. Teresa also testified that she had her attorney look over some information prior to the sale. Teresa further testified that she did not request that her attorney be present during the sale because she felt comfortable she was going to get everything she requested.

We agree with the trial court that Teresa failed to establish that the signed the act of sale under duress. Teresa's assignments of error also have no merit.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are split equally between The Acadiana Gazette/Michael Leblanc and Centre Media Group/Teresa Green.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.